**CHIEN–SHIH WANG, Appellee,**

v.

**ATTORNEY GENERAL OF the UNITED STATES; George W. Geil, District Director of the Immigration & Naturalization Service, Appellants.**

**No. 86–1932.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 15, 1987.

Decided July 17, 1987.

Donald E. Keener, Washington, D.C., for appellants.

Robert Frager, Kansas City, Mo., for appellee.

Before McMILLIAN, JOHN R. GIBSON and MAGILL, Circuit Judges.

McMILLIAN, Circuit Judge.

The Immigration and Naturalization Service (INS) appeals from a final judgment entered by the District Court for the Western District of Missouri estopping the INS from applying 1981 amendments to the Immigration and Nationality Act to Chien-Shih Wang's application for adjustment of immigration status. For reversal, the INS contends the district court erred in concluding that Wang had met the requirements for invoking equitable estoppel against the government. For the reasons discussed below, we reverse the judgment of the district court and vacate the injunction.

Chien-Shih Wang is a citizen of the Republic of China (Taiwan). He entered the United States with his family in 1975 on a diplomatic visa Class A–1. Wang was employed from 1975–1979 as the consul for the government of the Republic of China in Kansas City, Missouri. In 1979, the United States recognized the People's Republic of China and broke diplomatic relations with the Republic of China. The consulate office in Kansas City was closed and Wang was recalled to the Republic of China.

Wang decided to try to remain in the United States. He went to the INS office in Kansas City (Kansas City INS) and was given forms to apply for adjustment of immigration status for himself and his family under § 13 of the Immigration and Nationality Act of September 11, 1957, 8 U.S.C. § 1255b(b). Section 13 permits foreign diplomats to apply for adjustment of immigration status to that of permanent resident.[1]

On March 23, 1979, Wang submitted his completed application, including supporting documents, to the Kansas City INS. (The supporting documents included birth and marriage certificates and a household registration.) According to INS operating policies, stipulated to by the parties, an application that is incomplete or lacks the required documentation will not be accepted for filing. Wang's application was accepted for filing and he paid the required fee.

The Kansas City INS contacted the Department of State to verify Wang's diplomatic status on July 5, 1979. The State Department verified diplomatic status five months later and indicated at that time that there was no objection to approval of Wang's application. Wang was then asked to appear at the Kansas City INS for an interview on March 26, 1980, and was told to bring his passport to the interview. At the interview, Wang was given medical examination forms for himself and his family, but the INS interviewer did not ask Wang to produce any other documents. Wang returned the completed medical examination reports to the Kansas City INS on April 25, 1980.

Two weeks later, Wang's file was sent to the INS District Office in Washington, D.C. (Washington INS), for the next stage of processing. According to INS operating policies, stipulated to by the parties,

---

**1.** As originally enacted, § 13 provided:

If, after consultation with the Secretary of State, it shall appear to the satisfaction of the Attorney General that the alien is a person of good moral character, that he [or she] is admissible for permanent residence under this chapter, and that such action would not be contrary to the national welfare, safety, or security, the Attorney General, in his [or her] discretion, may record the alien's lawful admission for permanent residence....

Immigration and Nationality Act of September 11, 1957, Pub.L. No. 85–316, § 13, 71 Stat. 642 (amended 1981), current version at 8 U.S.C. § 1255b(b). Once approved by the Attorney General, the § 13 application was sent to Congress. 8 U.S.C. § 1255b(c). If either body of Congress did not disapprove the application, the applicant's immigration status was adjusted from diplomat to permanent resident. *Id.*

Wang's file should not have been forwarded to the Washington INS if the file was incomplete. On August 25, 1980, the Washington INS returned Wang's file to the Kansas City INS with instructions that "further information [is] needed for our decision" and asked that the matter be expedited. Kansas City INS employees testified that Wang's application was not given expedited treatment.

In fact, nine months passed before the Kansas City INS next contacted Wang. On May 28, 1981, the Kansas City INS notified Wang that birth and marriage certificates and a translation of a foreign document had not been received and requested that he promptly submit these documents. Wang testified that this was the first time he was aware that all the supporting documentation required for his § 13 application was not present. Wang said he immediately contacted the Kansas City INS and told them that he had already submitted these documents in March 1979. He was told the documents could not be found in his file and was instructed to resubmit them. Wang submitted a second set of documents about two weeks later. On June 17, 1981, the Kansas City INS again sent Wang's completed file to the Washington INS.

The final stage of approval of a § 13 application is adjudication by the INS District Director in Washington, D.C., followed by submission to Congress. The INS District Director did not adjudicate Wang's application until April 12, 1982. The INS estimates that absent this delay, Wang's application would have been submitted to Congress in September 1981. The INS also acknowledges that all fifty § 13 applications submitted to Congress at that time were approved.

Effective December 29, 1981, Congress amended § 13 to impose stiffer eligibility requirements. The Immigration and Nationality Act Amendments of 1981 (1981 Amendments) changed § 13 to require the applicant (1) to satisfy all the requirements of the previous law and, (2) in addition, to show "compelling reasons" why he or she is unable to return to the native country and that adjustment of status would be in the national interest. 8 U.S.C. § 1255b(b) (1982).[2]

The Washington INS returned Wang's file to the Kansas City INS on April 21, 1982, for processing under the 1981 Amendments. On June 1, 1982, the Kansas City INS informed Wang that he must submit additional evidence to satisfy the heightened requirements of the amended law.

Wang did not pursue an application under the amended law, but instead filed suit in district court seeking declaratory judgment and injunctive relief. Wang sought an order that the 1981 Amendments not be applied to his § 13 application and that the INS be compelled to adjudicate his application under the law as it stood before amendment.

The district court found that Wang had reasonably relied to his detriment on the INS to process his application in a timely and reasonable manner, but that the INS had unreasonably delayed in handling the application and had treated Wang differently from other applicants. *Wang v. Attorney General*, 636 F.Supp. 1208, 1213 (W.D.Mo.1986) (*Wang*). The district court also found that the INS had engaged in affirmative misconduct by attempting "to shift the blame" to Wang for the delay by accusing him in 1981 of failing to provide the required documentation when he initially submitted his application. *Id.* As found by the district court, the INS not only

---

**2.** After the 1981 Amendments, § 13 provides:
 If, after consultation with the Secretary of State, it shall appear to the satisfaction of the Attorney General that the alien has shown compelling reasons demonstrating both that the alien is unable to return to the country represented by the government which accredited the alien or the member of the alien's immediate family and that adjustment of the alien's status to that of an alien lawfully ad-

mitted for permanent residence would be in the national interest, that the alien is a person of good moral character, that he [or she] is admissible for permanent residence under this chapter, and that such action would not be contrary to the national welfare, safety, or security, the Attorney General, in his [or her] discretion, may record the alien's lawful admission for permanent residence....
 8 U.S.C. § 1255b(b) (1982).

refused to acknowledge that it had lost or misplaced the documents Wang had originally submitted, but erroneously accused Wang of never submitting the information at all. In considering whether the INS engaged in affirmative misconduct, the district court also mentioned the agency's "unwarranted delay." *Id.* Applying the doctrine of equitable estoppel, the district court enjoined the INS from applying the 1981 Amendments to Wang's application and ordered the INS to adjudicate Wang's application pursuant to § 13 as it existed before amendment.[3]

■ The INS contends on appeal that the district court erred in concluding that Wang had met the strict requirements for estopping the government. A person seeking to estop the government must establish (1) the traditional elements of estoppel and (2) that the government conduct challenged amounts to "affirmative misconduct." *Heckler v. Community Health Services of Crawford,* 467 U.S. 51, 61, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984) (*Heckler*) (traditional elements of estoppel); *INS v. Miranda,* 459 U.S. 14, 18, 103 S.Ct. 281, 283, 74 L.Ed.2d 12 (1982) (per curiam) (*Miranda*) (affirmative misconduct). The INS claims that the government may not be estopped as a matter of law and that, in any event, Wang failed to establish either requirement for estoppel against the government in this case.

The Supreme Court has never upheld an estoppel against the United States. Neither, however, has the Supreme Court or this court accepted the position urged by the INS that the government may not be estopped as a matter of law.

> [W]e are hesitant ... to say that there are *no cases* in which the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government.

*Heckler,* 467 U.S. at 60–61, 104 S.Ct. at 2224 (emphasis in original); *accord McDermott v. United States,* 760 F.2d 879, 882 (8th Cir.1985).

By reason of the affirmative misconduct requirement, the government may not be estopped as any other litigant. *Id.* 467 U.S. at 60, 104 S.Ct. at 2224. The Supreme Court has imposed a more stringent standard for estopping the government because there is a strong public interest in upholding the rule of law, even where hardship may result to individuals in particular cases. "When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined." *Id.* We begin, therefore, by asking whether there was a showing of affirmative misconduct in this case. *Miranda,* 459 U.S. at 17, 103 S.Ct. at 282 (affirmative misconduct requirement considered first), *citing INS v. Hibi,* 414 U.S. 5, 8–9, 94 S.Ct. 19, 21–22, 38 L.Ed.2d 7 (1973) (per curiam), *and Montana v. Kennedy,* 366 U.S. 308, 314–15, 81 S.Ct. 1336, 1340, 6 L.Ed.2d 313 (1961).

We must determine what conduct constitutes "affirmative misconduct" by negative implication: although the Supreme Court and this court have faced many cases in which the claim of affirmative misconduct has been raised, as noted above, the doctrine of estoppel has never been found to apply against the government. In *Miranda,* the Supreme Court held that negligent delay by an agency resulting in the loss of immigration status, absent evidence that the delay was "unwarranted," does not rise to the level of affirmative misconduct. 459 U.S. at 18–19, 103 S.Ct. at 284. Wang alleges more than mere delay in handling his application. He contends that by failing to notify him at various points in the processing of his application that his file was incomplete, the INS in effect gave him erroneous advice. A similar erroneous advice claim was made in *Montana v. Kennedy.* In that case, a government official

---

3. The district court noted that submission of Wang's application to Congress would not be part of the INS adjudication process. *Wang v. Attorney General,* 636 F.Supp. 1208, 1213 (W.D. Mo.1986). The one-house veto provision was declared unconstitutional in *INS v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983).

incorrectly told the petitioner's mother that she could not return to the United States from abroad because she was pregnant. The petitioner was born outside of the United States as a result. This foreign birth was later used by the government as a basis for denying the petitioner United States' citizenship. 366 U.S. at 314–15, 81 S.Ct. at 1340. The Supreme Court found that the official's misrepresentation fell "far short" of the misconduct required to justify estoppel against the government. *Id.*

■ The INS delay in this case, as well as its improper effort to blame Wang for its own errors in processing his § 13 application, are to be criticized. This negligence and possible bad faith, however, are less egregious than, or, at most, are substantially equivalent to, government misconduct that was found not to constitute affirmative misconduct in *Miranda* and *Montana v. Kennedy.* We hold therefore that the district court erred in concluding that this requirement had been met. Because we have determined that there was no showing of affirmative misconduct, we need not consider whether the traditional elements of equitable estoppel are present in this case.

Accordingly, the judgment of the district court is reversed and the injunction is vacated.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent.

The district court carefully examined the facts in this case and found that the INS had misplaced a part of Wang's application. It found that INS required copies of additional information, including birth certificates, marriage certificates and other documents, which Wang had already furnished. Two years after he filed his application on March 23, 1979, INS asked him to resubmit information already furnished and then attempted to shift the blame to him, stating that it had never been furnished. The district court concluded that this behavior is not consistent with the minimum standard of decency, honor and reliability. I cannot conclude that any of these findings of fact are clearly erroneous. I believe the district court's conclusion that these facts established affirmative misconduct is not in error.

Wang seeks no status in this appeal but simply the right to have his application considered under procedures existing before the amendments to section 1255b(b) enacted in December 1981. Had his application been timely processed, these earlier procedures would have applied. I would affirm the district court in its determination that the government should not be allowed to enforce the later amendments with respect to this case.