# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-4138

_____

| | | |
|---|---|---|
| W. Richard Morgan, and Janice J. Morgan, | * * * | |
| Petitioners, | * * | |
| v. | * * | Appeal from a decision of the United States Tax Court. |
| Commissioner of Internal Revenue, | * * * | |
| Respondent. | * | |

_____

Submitted:  September 8, 2003

Filed:  October 3, 2003

_____

Before SMITH, LAY, and BRIGHT, Circuit Judges.

_____

LAY, Circuit Judge.


## I.  BACKGROUND

This case arises out of tax assessments made against W. Richard Morgan and Janice J. Morgan (collectively "Morgan") for federal income tax deficiencies for the years 1981, 1982, and 1983 resulting from investments in a tax shelter later invalidated by the Internal Revenue Service.  As a result of these deficiencies,

Morgan filed for bankruptcy. On December 22, 1994, the bankruptcy court issued an order in which it refused to discharge Morgan's tax liabilities for 1981 and 1982, but granted a discharge as to Morgan's 1983 tax liability. The bankruptcy court also ruled, however, that the IRS retained the right to collect the 1983 liability from any assets that were exempt from the bankruptcy estate, which were limited to a pension plan held in the name of W. Richard Morgan.

In March of 1995, Morgan submitted an offer-in-compromise to the IRS, which was later rejected. Some time in 1997, Morgan's account was assigned to Revenue Officer Elizabeth Cooper, who sought on several occasions to convince Morgan to begin repaying his delinquent taxes. In May of 1998, the IRS issued a wage levy to Morgan's employer. On May 19, 1998, Cooper wrote a letter to Morgan's attorney, expressing the need for Morgan to submit another offer-in-compromise and to attempt to negotiate an installment agreement for the payment of all unpaid taxes. In this letter, Cooper also wrote: "regarding the 1983 [tax liability], Special Procedures Branch is in the process of getting it abated." Cooper wrote this based upon her conversations with the Special Procedures Branch of the IRS.

The wage levy provided an impetus for Morgan to enter into negotiations for an installment agreement. On June 4, 1998, Morgan and the IRS finalized an agreement covering only Morgan's 1981 and 1982 tax liabilities. Morgan's 1983 tax liability was not included in the installment agreement because at the time of its execution, both Morgan and Cooper believed that it would be abated. Shortly after the execution of this agreement, however, the Special Procedures Branch decided not to abate Morgan's 1983 liability. On September 11, 1998, Morgan's attorney sent a letter to Cooper explaining his understanding of the effect of the installment agreement, which was that the IRS would not commence additional collection procedures (including any pertaining to the 1983 liability) so long as Morgan remained current on payments. Morgan's attorney asked Cooper to verify or, if necessary, correct his understanding of the agreement. Although Cooper was aware

at the time she received this letter that the IRS had decided not to grant an abatement of the 1983 liability, she did not respond to this letter.[1]

On December 27, 1999, the IRS notified Morgan of its intent to levy to recover all unpaid taxes and penalties for the 1981, 1982, and 1983 tax years. Following a Collection Due Process hearing, the IRS Office of Appeals ruled that the IRS could not enforce by levy the 1981 and 1982 liabilities so long as Morgan complied with the terms of the installment agreement. The Office of Appeals also ruled, however, that the IRS could enforce by levy the 1983 tax liability against assets exempt from the bankruptcy.

Morgan filed an appeal in United States Tax Court, arguing that the IRS was estopped from enforcing by levy the 1983 tax liability based on its previous representations that the 1983 liability would be abated, and further that there would be no attempts at collection while the installment agreement remained in effect. Morgan argued that as a result of these representations, he suffered a detriment by entering into an installment agreement that failed to include his 1983 liability. The tax court affirmed the decision of the Commissioner. It held that it was not reasonable for Morgan to rely on Cooper's statements that his 1983 liability would be abated for two reasons. First, Morgan knew that the IRS could levy on his exempt assets to recover his 1983 liability.[2] Second, Morgan was represented by attorneys in the bankruptcy proceeding and in his dealings with the IRS. The tax court also held that Morgan had not relied on Cooper's statements to his detriment, but had

---

[1]In the tax court, Cooper testified that she called Morgan's attorney on September 16, 1998, but that she did not recall mentioning anything about the effect of the installment agreement.

[2]During the course of the bankruptcy proceeding, Morgan acknowledged that a federal tax lien encumbered all of his property, including any exempt property, to the extent it existed.

instead gained a benefit insofar as the payment of his 1983 liability had been delayed, and that he also received a favorable installment agreement for his 1981 and 1982 liabilities.[3]  Morgan now appeals.

## II.  DISCUSSION

The IRS argues, as an initial matter, that Morgan failed to raise his estoppel claim before the Office of Appeals, and that he should therefore be precluded from raising it on appeal.  The tax court considered this argument, and determined that Morgan had adequately raised the factual circumstances underlying a claim of estoppel.[4]  Although this is a close question, we assume, as did the tax court, that the facts underlying Morgan's claim of estoppel were sufficiently presented to the Office of Appeals to preserve the issue for our review.  See Ohio v. EPA, 838 F.2d 1325, 1329 (D.C. Cir. 1988) (finding exhaustion doctrine satisfied where agency had the "opportunity to consider the very argument pressed" on judicial review) (internal quotations and citations omitted).  We therefore turn to consider the merits of Morgan's claim of equitable estoppel.

Morgan argues that the tax court erred by refusing to apply estoppel against the IRS.  Although the Supreme Court has explicitly left undecided the question of whether a private party can ever estop the government, "it is well settled that the

---

[3]The installment required Morgan to make monthly payments in the amount of $1,000, an amount which, given the magnitude of Morgan's total tax liability, failed even to cover the interest accruing on the debt.

[4] In particular, the tax court concluded:

Well, I think I agree with [Morgan] that if the matter of the effect of the installment agreement on collections for 1983 was discussed [during the Collection Due Process hearing], the failure to put a legal label on it is not fatal so that we're going to have to consider that estoppel issue.

Government may not be estopped on the same terms as any other litigant." Heckler v. Cmty. Health Servs. of Crawford County, Inc., 467 U.S. 51, 60 (1984) (footnote omitted). In addition to establishing the traditional elements of estoppel, a party seeking to estop the government must first establish that it engaged in affirmative misconduct. See INS v. Miranda, 459 U.S. 14, 19 (1982) (per curiam) (when evaluating estoppel claim asserted against government, courts should inquire "whether, as an initial matter, there was a showing of affirmative misconduct"); see also Rutten v. United States, 299 F.3d 993, 995-96 (8th Cir. 2002). This is a heavy burden to carry. See Office of Personnel Mgmt v. Richmond, 496 U.S. 414, 422 (1990) (noting that "we have reversed every finding of estoppel [against the government] that we have reviewed").

Morgan claims that affirmative misconduct on the part of the IRS is demonstrated by the "totality of the circumstances." Morgan notes that Cooper's representations regarding the abatement of the 1983 liability were made both orally and in writing. See Heckler, 467 U.S. at 65 (expressing concern over estoppel claims against government based solely on alleged oral misrepresentations). Morgan also notes that the actions of the IRS violated its own internal policies. Specifically, Internal Revenue Manual § 5.14.1.5(1)(b) provides that no levy may be made on taxpayer accounts while installment agreements are in effect.

Morgan directs a majority of his affirmative misconduct argument, however, to the fact that Cooper failed to respond to his attorney's letter of September 11, 1998. He argues that she knew at the time that the 1983 liability would not be abated and that collection attempts were forthcoming. In this regard, Morgan principally relies upon Fredericks v. Comm'r, 126 F.3d 433 (3d Cir. 1997). Fredericks involved a tax assessment made by the IRS against a taxpayer some time after the three year statute of limitations to file such assessments had expired. The taxpayer agreed to file Form 872-A (Special Consent to Extend Time to Assess Taxes), thereby permitting the IRS to extend the statute of limitations indefinitely unless the taxpayer revoked

his consent. The IRS represented to the taxpayer that it never received Form 872-A, and successfully sought on three separate occasions to extend the statute of limitations for an additional year, the last of which expired on June 30, 1984. Sometime prior to this date, however, the IRS located Form 872-A, yet failed to inform the taxpayer of this fact. On July 9, 1992, eleven years after informing the taxpayer that Form 872-A did not exist, and eight years after the final one-year extension of the statute of limitations expired, the IRS mailed a notice of deficiency to the taxpayer. Based upon these facts, the Third Circuit concluded that the taxpayer had "mounted the high hurdle" of establishing equitable estoppel against the government. Id. at 435.

We hold the present case to be distinguishable from Fredericks. Between the date on which Cooper failed to correct Morgan's misunderstanding of the effect of the installment agreement, and the date the IRS notified Morgan of its intent to levy, nearly seventeen months had passed. While not insubstantial, this is a far shout from the eight-year period involved in Fredericks. See id. at 442 ("The IRS' decision to lie doggo, and induce the taxpayer into thinking all was well, *coupled with its additional eight-year delay in producing a document it previously represented as non-existent*, compels us to conclude that the IRS was guilty of affirmative misconduct . . . .") (emphasis added); see also In re Charter Behavioral Health Sys., LLC, 292 B.R. 36, 44 (Bankr. D. Del. 2003).

However, in Mancini v. Redland Ins. Co., 248 F.3d 729 (8th Cir. 2001), this court encountered a claim made by homeowners for flood insurance benefits pursuant to the National Flood Insurance Act, 42 U.S.C. § 4001 *et seq*. The proof of loss form submitted by the homeowners did not contain their signatures, as was required under the terms of the policy. After their claim was denied, the homeowners' attorney wrote to the insurance company, specifically asking whether they intended to take the position that the homeowners had failed to submit a proper proof of loss. Although the insurance company responded to this letter, it did not address the proof of loss

issue. Id. at 733. Thereafter, the homeowners filed suit for benefits under the policy, arguing that the insurance company, by virtue of its failure to respond to their attorney's letter, should be estopped from arguing that the proof of loss was defective. This court disagreed, ruling that the government could not be estopped on the facts of the case. Id. at 735. We see no reason why a different result should obtain under the facts of the present case. In fact, both at trial and on appeal Morgan conceded that Cooper's conduct was not intended to purposely mislead him. The "negligence and possible bad faith" of the IRS in this case is insufficient grounds for estoppel. Wang v. Att'y Gen., 823 F.2d 1273, 1277 (8th Cir. 1987).

## III. CONCLUSION

To be sure, the conduct of the IRS in this case falls short of that which should be expected of an agency of the government, especially one touching on the financial affairs of its citizens. But as the Supreme Court has instructed, "not even the temptations of a hard case," Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 386 (1947), can justify the application of estoppel against the government.

For the foregoing reasons, the judgment of the tax court is AFFIRMED.

_____