# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3047

_____

United States of America,           \*

                        \*

        Appellee,         \*

                        \*   Appeal from the United States

    v.                    \*   District Court for the District

                        \*   of South Dakota.

James Grap,                \*

                        \*

        Appellant.      \*

_____

Submitted:  March 9, 2004

Filed:  May 7, 2004

_____

Before WOLLMAN, MORRIS SHEPPARD ARNOLD, and COLLOTON, Circuit
    Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

James Grap was convicted of violating 18 U.S.C. § 1512(b)(1) by tampering with a witness during the pendency of an earlier case. Mr. Grap had attempted to influence the testimony of his victim before he pleaded guilty to aggravated sexual abuse pursuant to a plea agreement. Before he pleaded guilty to the witness tampering charge, Mr. Grap filed a motion to dismiss the indictment, contending that the government's prosecution of this offense violated its plea agreement with him in

the earlier case.  The district court[1] denied his motion to dismiss, then accepted his guilty plea and sentenced him to 42 months imprisonment, to be served consecutively to the sentence imposed for the sex offense.  He now appeals the district court's denial of his motion to dismiss and its application of the sentencing guidelines.  We affirm.

## I.

In Mr. Grap's plea agreement with respect to the sex offense, the government promised that in exchange for his guilty plea to one count of aggravated sexual abuse, it would dismiss a second count and would not further prosecute him "based on the information and evidence now available to the United States regarding [his] involvement with regard to the two factual scenarios underlying the two counts of the indictment."  The government also promised in the plea agreement that, "unless there is significant evidence disclosed in the presentence investigation to the contrary," it would recommend that the district court "find that [Mr. Grap] clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, and in recognition thereof" that he receive a sentence reduction in accordance with U.S.S.G. § 3E1.1.

Mr. Grap signed this plea agreement on 25 March, 2002.  The government signed and filed the agreement on 26 March, and Mr. Grap pleaded guilty to aggravated sexual abuse, in accordance with the agreement, on 27 March.  The day before he signed the agreement, Mr. Grap asked a friend named Johnny Alvarez to talk to the sexual abuse victim at her school and tell her to go to the United States Marshal's office and state that she had lied in making the allegation that led to Mr. Grap's indictment.  He further instructed Mr. Alvarez to tell her that if she did so, he would move away and he would not hurt her.  He also told Mr. Alvarez that he had "some people that want to kick her ass" and "some people willing to smoke her ass."

---

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota.

Finally, he instructed Mr. Alvarez to tell the victim that he would be friends with her if she went to the authorities and stated that she lied, but that otherwise "I got some friends that are willing to come after her."

Later the same day, Mr. Alvarez called the victim's home and spoke with the victim's sister, telling her that he had just talked to Mr. Grap, and that he was relaying a message to the victim that Mr. Grap wanted her to say that she was lying when she reported the sexual abuse because that would keep him from going to prison. Mr. Alvarez did not relay Mr. Grap's statements that if the victim failed to recant the allegation, people unnamed would "kick her ass," "smoke her ass," or "come after her." After this phone call, the victim's sister told the victim what had happened, the two sisters told their mother, the mother immediately contacted law enforcement officials, and on 25 March the government initiated an investigation into the witness contact.

Mr. Grap was sentenced for the sex offense about three months after he asked Mr. Alvarez to contact the victim and he entered into the plea agreement. The government concedes that it finished its investigation of the witness tampering incident before Mr. Grap was sentenced for the sex offense, and that it consciously withheld the information about the witness tampering from the district court and Mr. Grap's attorney during the sentencing process. At the time of sentencing, despite its knowledge of the witness tampering in relation to the sex offense, the government did not retreat from its promise to recommend to the court that Mr. Grap receive a sentence reduction for accepting responsibility for the offense.

About six months after the sentencing, the government indicted Mr. Grap for the instant offense based on his attempt to pressure the victim into lying about the occurrence of the sexual abuse. In contrast to the positions that it took during the sentencing that Mr. Grap deserved a reduction in his sentence because he had demonstrated an acceptance of responsibility for his commission of the aggravated

sexual abuse, and that there was no evidence that Mr. Grap had engaged in obstructive conduct warranting a sentence enhancement, the government indicted Mr. Grap for "knowingly and corruptly persuad[ing] and attempt[ing] to persuade [the victim] by requesting that she lie in the [rape case] with the intent to influence her testimony in the [rape case]."

In his motion to dismiss his witness tampering indictment, Mr. Grap argued that the indictment violated his due process rights by violating the promise that induced his guilty plea, and he requested that the district court "specifically enforce his prior plea agreement and hold the government to its promises made therein." The district court refused to do so, concluding that the witness tampering prosecution did not violate the plea agreement because the agreement not to prosecute Mr. Grap further for certain conduct did not encompass the conduct that was the basis for the witness tampering charge. On appeal, he continues to argue that the witness tampering charge was barred by the plea agreement and thus violated his due process rights. He also contends, for the first time on this appeal, that the government's pre-indictment delay was unreasonable and violated his due process rights, and that the witness tampering prosecution was barred by the doctrine of judicial estoppel. Because he failed to raise these latter two arguments in the district court, we review them only for plain error. *See United States v. Robinson*, 110 F.3d 1320, 1324, 258 F.3d 791, 794 (8th Cir. 1997), *cert. denied*, 522 U.S. 975 (1997).

II.

The government contends that we should not consider the merits of Mr. Grap's arguments that it was prohibited from prosecuting him for witness tampering, because he waived those claims by pleading guilty to the witness tampering charge following the district court's denial of his motion to dismiss the indictment. *Cf. Blackledge v. Perry*, 417 U.S. 21, 29-31 (1974). The matter of waiver is more complicated than it might initially appear, but we need not address it because we think that Mr. Grap's arguments are rather easily disposed of on the merits.

-4-

A.

The district court determined that the witness tampering charge was not within the scope of the government's agreement not to initiate any further prosecutions against Mr. Grap "based on the information and evidence now available to the United States regarding [his] involvement with regard to the two factual scenarios underlying the two counts of the indictment." We agree. Even assuming that the witness tampering charge was "based on the information and evidence ... available to the United States" on the effective date of the plea agreement, we conclude that the charge included facts sufficiently distinct from Mr. Grap's "involvement with regard to the two factual scenarios underlying" the two counts of sexual abuse to fall outside the purview of the agreement. The conduct that formed the basis for the witness tampering charge amounted to a third "factual scenario" occurring several months after the second incident of sexual abuse. It is true that this "scenario" would not have occurred but for the incidents of abuse, but it was conceptually and temporally distinct from the abuse itself. We thus reject Mr. Grap's argument that the government violated his due process rights by breaking the promise that it made in the plea agreement.

B.

Mr. Grap also contends that the government's delay in indicting him for witness tampering until after his sentencing in the sexual abuse case violated his fifth amendment due process rights. "[A]n unreasonable pre-accusation delay, coupled with prejudice to the defendant, may violate the Fifth Amendment." *United States v. Jackson*, 504 F.2d 337, 339 (8th Cir. 1974), *cert. denied*, 420 U.S. 964 (1975); *see also United States v. Marion*, 404 U.S. 307, 324-26 (1971). To prevail on his claim that pre-indictment delay warranted dismissal of his witness tampering indictment, Mr. Grap is required to show "both that the government deliberately delayed in order to gain a tactical advantage and that the delay prejudiced him in presenting his case." *United States v. Carlson*, 697 F.2d 231, 236 (8th Cir. 1983). Alleged prejudice is insufficient to establish a due process violation if it is "insubstantial, speculative, or

premature." *United States v. Golden*, 436 F.2d 941, 943 (8th Cir. 1971), *cert. denied*, 404 U.S. 910 (1971).  Rather, Mr. Grap must show that he has been "actually and substantially prejudiced" by the delay.  *United States v. McDougal*, 133 F.3d 1110, 1113 (8th Cir. 1998).

We conclude that Mr. Grap's due process argument is without merit because he has failed to demonstrate that the delay actually and substantially prejudiced him. That is because it is quite clear that Mr. Grap's sentence was shorter than the one that he would have received if the judge who sentenced him for the sexual abuse had taken into account his witness tampering conduct.  Mr. Grap was sentenced to 121 months on the sexual abuse count, based on an offense level of 28 that reflected a reduction for his acceptance of responsibility and no enhancement for obstructing justice.  He was later sentenced to 42 months on his witness tampering count, to run consecutively with his sexual abuse sentence, and his total sentence was thus 163 months.

If, under Mr. Grap's purportedly preferred sequence of events, the government had disclosed his witness tampering conduct to the district court sentencing him for the sexual abuse, he would surely have been assessed a two-level enhancement to his base offense level under U.S.S.G. § 3C1.1, which requires such an increase when a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction" and that obstructive conduct related to the offense of conviction.  One of the examples of the types of conduct to which the obstruction enhancement applies is "threatening, intimidating, or otherwise unlawfully influencing a ... witness, ... directly or indirectly, or attempting to do so." U.S.S.G. § 3C1.1 comment. (n.4(a)).  This is precisely what Mr. Grap did, as we show in Part IV of this opinion.

Had Mr. Grap's conduct been disclosed to the district court, moreover, he undoubtedly would not have received the three-level reduction that he received under U.S.S.G. § 3E1.1 for "clearly demonstrat[ing] acceptance of responsibility for his offense." His attempt to persuade the victim to recant her allegation that he had raped her is the very antithesis of accepting responsibility for the rape. Consequently, had the conduct been disclosed during the sexual abuse sentencing, his offense level would have been 33, leaving him with a recommended guideline range of 168 to 210 months, and he thus would have received a sentence longer than the 163 months that he actually received.

Even assuming therefore that the government's conduct in consciously withholding relevant information from the original sentencing court was unethical or otherwise improper, it did not violate Mr. Grap's due process rights because it did not prejudice him. To the contrary, the government's decision to withhold the tampering information from the court sentencing him for sexual abuse worked to his advantage, resulting in a shorter sentence than he otherwise would have received. Because it resulted in a shorter overall sentence, moreover, the government's delay in disclosing its awareness of the tampering conduct also cannot be said to have been employed "to gain a tactical advantage," which, as we have already noted, is something that Mr. Grap was required to show to make out a due process claim.

Mr. Grap argues that, even if his total sentence is now lower than it otherwise would have been under his proposed alternative series of events, he was nevertheless prejudiced because he now has two felony convictions instead of only one; thus, the argument goes, he is subject to a higher security classification by the Bureau of Prisons and will possibly be exposed to harsher punishment in the future if he ever commits another offense. The prejudice alleged in pre-indictment delay cases typically involves the unavailability of a trial witness or other evidence, or other circumstances impairing a defendant's ability to defend himself, and the harms that Mr. Grap has identified are not of this nature. But even if the prejudice that Mr. Grap

has identified is categorically appropriate for establishing a due process violation, he has not demonstrated that it outweighs the benefit of a shorter sentence (of at least several months, and possibly a few years) that he received as a result of the challenged governmental conduct. Whatever harm he has incurred is speculative and insubstantial, and in any event seems to us incommensurable with the substantial benefit that he received. The district court therefore committed no plain error in failing to dismiss the witness tampering indictment because of pre-indictment delay.

## III.

Mr. Grap maintains that the government was prohibited from prosecuting him on the witness tampering charge under the doctrine of judicial estoppel, which "prohibits a party from taking inconsistent positions in the same or related litigation." *Hossaini v. Western Mo. Med. Ctr.*, 140 F.3d 1140, 1142 (8th Cir. 1998). According to Mr. Grap, the position that the government took during his sex offense sentencing was flatly inconsistent with the position that it took in subsequently prosecuting him for witness tampering, and it therefore should have been estopped from bringing the later indictment.

Mr. Grap has not identified any criminal case in which we have enforced an estoppel against the government. It is true that in *United States v. French*, 46 F.3d 710, 714 (8th Cir. 1995), we assumed, without deciding, that a criminal defendant could assert estoppel. But the Supreme Court has observed that it is "well settled that the Government may not be estopped on the same terms as any other litigant" because "[w]hen the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined." *Heckler v. Community Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 60 (1984). In fact, "the Supreme Court has repeatedly indicated that an estoppel will rarely work against the government," *Conforti v. United States*, 74 F.3d 838, 841 (8th Cir. 1996), *cert. denied*, 519 U.S. 807

(1996), and we recently stated that a private party trying to estop the government has "a heavy burden to carry." *Morgan v. C.I.R.*, 345 F.3d 563, 566 (8th Cir. 2003).

"[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal quotations omitted). One of the considerations that typically informs the decision of whether to apply the doctrine in a particular case "is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* Because of the traditional reluctance to allow criminal defendants to estop the government, and the unlikelihood that Mr. Grap suffered any "unfair detriment" (as explained above, the government's alleged inconsistency shortened his overall sentence by at least several months), we can detect no plain error in the district court's failure to exercise its discretion in favor of Mr. Grap.

IV.

Mr. Grap challenges the district court's application of an eight-level enhancement to his offense level under U.S.S.G. § 2J1.2(b)(1), which mandates such an enhancement "[i]f the offense involved ... threatening to cause physical injury to a person ... in order to obstruct the administration of justice." He argues that the enhancement was inapplicable because even if he made a threat, it was never communicated to the victim. We review the district court's construction and application of a sentencing guideline *de novo*. *United States v. Harrison*, 340 F.3d 497, 499 (8th Cir. 2003).

The district court imposed the enhancement after noting that Mr. Grap had told Mr. Alvarez, in the course of asking him to contact the rape victim and urge her to reconsider her testimony, that "some people are willing to smoke [the victim's] ass" and that "I got some friends that are willing to come after [the victim]." Mr. Grap does not dispute that he made these statements, but he argues that the fact that they

were never imparted to the victim places his conduct outside the range of behavior covered by § 2J1.2(b)(1).

Whether § 2J1.2(b)(1) is limited to situations where a threat is actually communicated to the person who is the object of the threat is a matter of first impression in this court. The Eleventh Circuit, however, in *United States v. Moody*, 977 F.2d 1420, 1425 (11th Cir. 1992), *cert. denied*, 507 U.S. 944 (1993), held that threatening statements need not be communicated directly to the potential victim in order to be subject to the enhancement, and upheld application of the guideline where a defendant merely "intended" that the threat be relayed to the potential victim. *Cf. United States v. Martin*, 163 F.3d 1212, 1216-17 (10th Cir. 1998), *cert. denied*, 526 U.S. 1137 (1999); *United States v. Raymer*, 876 F.2d 383, 391 (5th Cir. 1989), *cert. denied*, 493 U.S. 870 (1989). Mr. Grap cites no authority for his proposed interpretation, but simply argues that it is supported by the plain meaning of the guideline's language.

The record supports the conclusion that Mr. Grap made threatening statements to Mr. Alvarez suggesting that the victim was at risk of receiving physical injuries if she did not comply with his request. Through these statements to Mr. Alvarez, he communicated his intent to inflict harm on the victim if she did not change her story. We think that the making of these statements was sufficient to warrant the application of § 2J1.2(b)(1), even though Mr. Alvarez ultimately decided not to relay the threats. We decline to read into the guideline a requirement that the threat must have been communicated to the person intended to be threatened. The plain meaning of the guideline's language suggests no such limitation.

V.

For the reasons stated, we affirm the district court's denial of Mr. Grap's motion to dismiss the witness tampering indictment and its application of the sentencing guidelines.

_____