# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3087

_____

Peter Bartlett; Sara Boevers; Steven Boevers; Dale Busch; Duane Busch; Brad Carlson; Matthew Carlson; Scott Chapin; Jeffrey Cook; Dimon Grain & Livestock, Inc.; Doolittle Enterprises, LLC; Eric Doolittle; Brian Fonken; Jacquelyn Fonken; Max Fonken; Hanson Corporation; Russell L. Hanson; Charles A.D. Haywood; Paul Haywood; Terry Hennings; Hillcrest Stock Farms, Inc.; Kreg Kantak

*Plaintiffs - Appellants*

Kevin Luedtke

*Plaintiff*

Larry Luhring; Richard Luhring; Brian Meyer; Moser Farms, Inc.; Mott Farms, Inc.

*Plaintiffs - Appellants*

Jack Moulds

*Plaintiff*

Kennerly N. Reece; Ridge View Stock Farms, Corp.; Nolan Rollene; Schwandt Farms, Inc.; Dallas Thomas; Vierkandt Farms; Adam Wibholm; John Wibholm; Jason Woodring

*Plaintiffs - Appellants*

v.

United States Department of Agriculture; Thomas J. Vilsack, in his official capacity as Secretary of the United States Department of Agriculture; Farm

Service Agency; Bruce Nelson, in his official capacity as Acting Administrator of the Farm Service Agency; Iowa State Farm Service Agency; John Whitaker, in his offical capacity as Executive Director of the Iowa State Farm Service Agency

*Defendants - Appellees*

————————

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

————————

Submitted: April 9, 2013
Filed: June 5, 2013

————————

Before LOKEN and GRUENDER, Circuit Judges, and PHILLIPS,[1] District Judge.

————————

GRUENDER, Circuit Judge.

Plaintiffs are thirty-eight individuals and entities who farm corn and soybeans in several counties in Iowa (collectively, the "Producers"). Each Producer claimed eligibility to receive a payment under the Supplemental Revenue Assistance Payments Program ("SURE Program") for the 2008 crop year. In this lawsuit, the Producers allege that the defendants, six government entities and officials, improperly calculated SURE program payments allegedly owed to them under 7 U.S.C. § 1531. The district court[2] dismissed the lawsuit because the Producers failed to exhaust their

———————————————

[1]The Honorable Beth Phillips, United States District Judge for the Western District of Missouri, sitting by designation.

[2]The Honorable Linda R. Reade, Chief United States District Judge for the Northern District of Iowa.

administrative remedies before filing suit and no equitable doctrine excused their failure to exhaust.  The Producers appeal, and we affirm.

## I. BACKGROUND

The defendants are the United States Department of Agriculture ("USDA"); the Farm Service Agency ("FSA"); the Farm Service Agency for the State of Iowa ("Iowa FSA"); Secretary of Agriculture Thomas J. Vilsack; Acting Administrator of the Farm Service Agency, Bruce Nelson; and Executive Director of the Iowa Farm Service Agency, John Whitaker (collectively, the "Government").  The USDA, through its division the FSA, implements the SURE Program on the federal level.  Congress created the SURE Program through the Food Conservation and Energy Act of 2008, and the FSA has adopted regulations to administer the program.  The SURE Program provides disaster assistance payments to eligible producers for losses in crop production or quality resulting from a natural disaster.  Under the SURE Program, eligible producers may receive sixty percent of the difference between the disaster assistance program guarantee ("SURE guarantee") and the total actual revenue of the farm. 7 U.S.C. § 1531(b)(2)(A).  Pursuant to a statutory formula, the SURE guarantee is equal to 120 percent of the product of three factors, one of which is the "price election for the commodity elected by the eligible producer" ("price election"). *Id.* § 1531(b)(3)(A)(ii).  In turn, FSA regulations define "price election" as "the crop insurance price elected by the participant multiplied by the percentage of price elected by the participant." 7 C.F.R § 760.602.  State committees, such as the Iowa FSA, and local county committees are responsible for administering FSA programs on the local level. 7 C.F.R. § 7.2.  As part of their responsibilities, these FSA subdivisions use federal and statutory formulas to calculate and issue SURE Program payments under the supervision of the FSA.

A program participant may seek administrative review of certain adverse county committee determinations by requesting reconsideration by the county

committee, appealing to the state committee, requesting reconsideration by the state committee, agreeing to mediation, or appealing to the USDA National Appeals Division ("NAD"). 7 C.F.R. § 780.6. The NAD is a separate subdivision within the USDA and is independent of all other USDA agencies and offices, including local department officials. 7 C.F.R. § 11.2(a). The Secretary of Agriculture appoints the Director of the NAD, 7 U.S.C. § 6992(b)(1), and the NAD Director makes the final administrative decision as to whether an agency decision is appealable. *Id.* § 6992(d); 7 C.F.R. §11.6. Notwithstanding the other avenues of administrative appeal, only "final determination[s]" by the NAD are "reviewable and enforceable" by district courts. 7 U.S.C. § 6999; 7 C.F.R. § 11.13(a).

However, not all county committee decisions are eligible for administrative review. By regulation, neither the FSA nor the NAD has the authority to review matters of "general applicability." The relevant FSA regulations state that unappealable county committee determinations include decisions regarding: "(1) Any general program provision or program policy or any statutory or regulatory requirement that is applicable to similarly situated participants; [or] (2) Mathematical formulas established under a statute or program regulation and decisions based solely on the application of those formulas." 7 C.F.R. § 780.5(a). The administrative appeal regulations applicable to the NAD further provide that "[t]he procedures contained in this part may not be used to seek review of statutes or USDA regulations issued under Federal Law." 7 C.F.R. § 11.3(b). These regulations provide both the State Executive Director and the NAD Director with the authority to determine whether an adverse county committee decision is appealable. 7 U.S.C. § 6992(d); 7 C.F.R. § 11.6(a); 7 C.F.R. § 780.5(b). However, the State Executive Director's determination is not a final agency action; rather, it "is considered by FSA to be a new decision." 7 C.F.R. § 780.5(c). In other words, only the NAD Director has the final authority to determine whether an FSA decision falls into the categories of issues that are eligible for administrative appeal, and, as explained above, only a final decision of the NAD is reviewable by a district court. 7 U.S.C. § 6999; 7 C.F.R. § 11.13.

-4-

The Producers each submitted an application for a SURE Program payment for the 2008 crop year. The dispute here centers on the price election figure that the county committees used to calculate the Producers' SURE Program payments. Specifically, the Producers contend that the price election should be determined by using the price election figure in each of their individual crop insurance policies, rather than the price election figures established by the USDA's Risk Management Agency ("RMA"). The Producers argue that the county committees' decision to use the RMA price election figures resulted in SURE Program payments that were erroneously low, and in some cases, zero.

One of the Producers, Vierkandt Farms, contacted attorney Douglas E. Gross after the local county committee in Hardin County, Iowa, informed it that no SURE Program payment would be forthcoming for the 2008 crop year. Gross requested a hearing before the Hardin County Committee to reconsider the matter. Gross averred that at that hearing, Kevin McClure, Iowa FSA Chief Agricultural Program Specialist, informed him that the issues raised at that hearing were matters of general applicability and, thus, not eligible for administrative appeal.

Five days after the hearing, Gross spoke with McClure by telephone. Gross stated that McClure agreed that the "FSA/NAD appealability review process" would be a "wast[e of] everyone's time and money" because it would be "fruitless and futile." He further testified that McClure stated that "he would ensure that the Hardin County FSA's letter denying Vierkandt Farms's appeal would contain language stating that Vierkandt Farms' administrative appeal process had been exhausted at the county level." Gross's firm then was retained by thirty-seven other clients, including each of the Producers. The Producers all appealed their initial 2008 SURE Program payment calculations to their respective county committees. The FSA county committees heard each appeal at separate informal hearings and denied the appeals, all finding the issues were non-appealable matters of general applicability. Following each of the informal hearings, the Producers each received a letter from their respective FSA county committee informing them of the committee's decision. The

letters explained how the SURE Program payments were calculated and stated that there were no data entry errors. Each letter also stated:

> The county committee has determined that the issues raised in this appeal are not appealable. . . . You may seek a review of the county committee's determination by filing with either the FSA State Executive Director or the National Appeals Division (NAD) Director a written request no later than 30 calendar days after the date you receive this notice according to the FSA appeal procedures found at 7 CFR Part 780 or the NAD appeal procedures found at 7 CFR Part 11. If you believe that this issue is appealable, you must write to either the FSA State Executive Director or the NAD Director at the applicable address shown and explain why you believe this determination is appealable. . . . If you request an appealability review by the State Executive Director and the State Executive Director determines that the issue is not appealable, you will be afforded the right to request an appealability review by the NAD Director.

The letters then provided the addresses of the Iowa FSA Executive Director and the NAD Director. Notwithstanding the body of the letters, a seemingly contradictory concluding sentence stated: "If you do not file an appealability review request, your administrative review process has been exhausted."

After receiving these letters from their respective FSA county committees, none of the Producers sought further review from the county committees, the FSA State Executive Director, the NAD, or elsewhere within the USDA. Instead, the Producers filed this lawsuit. The Government filed a motion to dismiss based on the Producers' failure to exhaust their administrative remedies pursuant to § 6912(e), which, along with § 6992 and § 6999, requires parties to appeal adverse FSA determinations to the NAD before filing suit in district court. The district court held that the Producers failed to exhaust their administrative remedies and that no equitable doctrine excused the Producers' failure to exhaust. On appeal, the Producers do not challenge the district court's conclusion that they failed to exhaust

-6-

their administrative remedies and challenge only whether an equitable doctrine excuses their failure to exhaust.

## II. DISCUSSION

"We review '*de novo* the grant of a motion to dismiss, taking all facts alleged in the complaint as true.'" *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (quoting *Owen v. Gen. Motors Corp.*, 533 F.3d 913, 918 (8th Cir. 2008)). We also review the district court's decision on exhaustion *de novo*. *Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp.*, 440 F.3d 992, 1000 (8th Cir. 2006). As an initial matter, we must address the Government's argument that the Producers' failure to satisfy the exhaustion requirement in § 6912(e) is a jurisdictional bar to review. Exhaustion statutes may be jurisdictional or nonjurisdictional. *Id.* at 996 (citing *Weinberger v. Salfi*, 422 U.S. 749 (1975)). If a statute is jurisdictional, a court cannot excuse or waive the exhaustion requirement, and a party's failure to exhaust bars review. *Id.* "In contrast, a non-jurisdictional statute codifies the common law exhaustion principle under which exhaustion of administrative remedies is favored, but may be excused by a limited number of exceptions to the general rule." *Id.* (citing *Salfi*, 422 U.S. at 765-66).

Here, the applicable statute, 7 U.S.C. § 6912(e), provides that "a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction against (1) the Secretary [of the USDA]; (2) the [USDA]; or (3) an agency office, officer, or employee of the [USDA]." In *Ace Property*, we held "that § 6912(e) is nothing more than 'a codified requirement of administrative exhaustion' and is thus not jurisdictional." 440 F.3d at 999 (quoting *Salfi*, 422 U.S. at 757).[3] As a result, the

[3]The Government correctly notes that the circuits are split on whether § 6912(e) is jurisdictional—a split that existed when we first decided the issue in *Ace Property*. *Compare McBride Cotton & Cattle Corp. v. Veneman*, 290 F.3d 973 (9th Cir. 2002)

Producers' failure to exhaust their administrative remedies is not a jurisdictional bar to review and the court may consider whether exhaustion is excused under a limited number of exceptions. The Producers advance three alternative arguments as to why they were not required to exhaust their administrative remedies: further appeal within the USDA would have been futile, their claim raised a purely legal question, and the Iowa FSA's misconduct equitably estops the Government from asserting the failure to exhaust defense.

### A. Futility

The Producers contend that their failure to exhaust should be excused as futile because the NAD lacked authority to hear their appealability claim, and even if it possessed such authority, the USDA did not have authority to grant effective relief on the underlying price election issue. "An administrative remedy will be deemed futile if there is doubt about whether the agency could grant effective relief." *Ace Prop.*, 440 F.3d at 1000. The Supreme Court has identified specific circumstances that render an administrative remedy futile. For example, "an agency, as a preliminary matter, may be unable to consider whether to grant relief because it lacks institutional competence to resolve the particular type of issue presented" or "an agency may be competent to adjudicate the issue presented, but still lack authority to grant the type of relief requested." *McCarthy v. Madigan*, 503 U.S. 140, 147-48 (1992).

As to the USDA's ability to adjudicate the appealability issue, the Producers contend that the court should excuse their failure to exhaust as futile because the price

---

(holding the exhaustion requirement in § 6912(e) to be non-jurisdictional) *with Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90 (2d Cir. 1998) (concluding that the exhaustion requirement in § 6912(e) is a jurisdictional bar to review). However, "[i]t is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel." *Sisney v. Reisch*, 674 F.3d 839, 843 (8th Cir. 2012) (quoting *Owsley v. Luebbers*, 281 F.3d 687, 690 (8th Cir. 2002)).

election issue is an unappealable issue of general applicability. As the district court correctly noted, however, the Producers' argument is circular. By assuming that the price election issue is one of general applicability, Producers' argument necessarily makes its conclusion that the question is unappealable. However, the question of general applicability is what would be at issue had the Producers appealed the question of appealability to the NAD.

The Producers' argument also runs counter to federal statutes and USDA regulations, which vest the final authority to determine administrative appealability with the NAD Director. 7 U.S.C. § 6992(d) ("[T]he [NAD] Director shall determine whether the decision is adverse to the individual participant and thus appealable or is a matter of general applicability and thus not subject to appeal. The determination of the Director as to whether a decision is appealable shall be administratively final."); 7 C.F.R. § 11.6(a)(2) ("The [NAD] Director shall determine[] whether the decision is adverse to the individual participant and thus appealable or is a matter of general applicability and thus not subject to appeal, and will issue a final determination notice that upholds or reverses the determination of the agency."). Thus, the ultimate authority to interpret 7 C.F.R. § 780.5 and determine whether a decision is appealable lies not with the FSA county committees but with the NAD. Indeed, the FSA county committee decision letters sent to the Producers acknowledge that their appealability determination is neither final nor dispositive by outlining the available appeal procedures. Further, as one recent NAD decision illustrates, an appeal to the NAD Director can lead to reversal of an initial FSA determination of unappealability. *See* USDA National Appeals Division, NAD Determinations, Case No. 2011E000297, Appealability Decision (Feb. 28, 2011) *available at* http://www.nad.usda.gov/public_search.html (reversing the FSA's determination and concluding that a farmer's appeal asserting error in a SURE Program payment calculation was specific to the farmer's individual circumstances and, therefore, appealable). Because the NAD is vested with final authority to determine whether an issue is appealable, an FSA decision that an issue is not appealable does not make an appeal to the NAD futile, and the Producers' attempt to treat the FSA's

appealability determination as final amounts to an end run around the administrative appeal process.

The Producers also argue that any appeal to the NAD would have been futile because the USDA still would not have been able to grant relief on the merits of the underlying price election issue. The Producers contend that regulations preclude the USDA from providing relief because the Producers' claims rest on a challenge to the FSA's general interpretation and application of the term "price election," which they assert to be a matter of general applicability that is not appealable through the NAD or FSA appeals process. However, the Producers' contention misconceives the USDA procedures. From the agency's perspective, the threshold question is whether the county committees' decision to use the RMA price election figures is subject to any further administrative review. If the NAD Director (or his designee) disagrees with the county committees and decides that the price election issue is appealable, then the Producers' appeal would be referred to an NAD hearing officer for an administrative hearing and review of the merits of the FSA's decision. *See* 7 U.S.C. § 6996; 7 C.F.R. §§ 11.1; 11.6; 11.8. The hearing officer's decision on the merits could then be appealed to the NAD Director, and the Director's decision on the merits then would become a final agency action subject to judicial review in accordance with the Administrative Procedure Act. *See* 7 U.S.C. §§ 6998-6999; 7 C.F.R. §§ 11.9; 11.13; *Deaf Smith Cnty. Grain Processors, Inc. v. Glickman*, 162 F.3d 1206, 1213 (D.C. Cir. 1998). If, however, the NAD Director decides that the price election issue is a matter of general applicability and therefore not subject to further administrative review, that decision is a final agency action satisfying the Producers' obligation to "exhaust all administrative appeal procedures." 7 U.S.C. § 6912(e). The merits of the county committees' decisions are then reviewable under 7 U.S.C. § 6999 and 7 C.F.R.

§11.13.[4]  Therefore, the district court did not err in concluding that futility did not excuse the Producers' failure to exhaust.

## B. Legal Question

The Producers argue that the legal question exception excuses their failure to exhaust.  Under the legal question exception, also called the legal issues exception, a party's failure to exhaust should be excused if the issues "are legal questions which are not suitable for administrative resolution and are more properly resolved by the courts."  *Ace Prop.*, 440 F.3d at 1001.  "The legal issues exception is extremely narrow and should only be invoked if the issues involved are ones in which the agency has no expertise . . . ." *Id.*  Requiring exhaustion in cases that call for agency expertise prevents "premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors."  *Id.* (quoting *Salfi*, 422 U.S. at 765).  It also "afford[s] the parties and the court the benefit of [the agency's] experience" and "complete[s] a record which is adequate for judicial review."  *Id.* (quoting *Salfi*, 422 U.S. at 765).  We note that the parties dispute which issue the court should consider as the basis for the legal question exception.  The Producers argue that we should consider the underlying price election issue, while the Government contends that the proper basis for the inquiry is the appealability determination.

Congress specifically vested the NAD with the authority to determine appealability.  *See* 7 U.S.C. § 6992(d) ("[T]he [NAD] Director shall determine whether the decision is adverse to the individual participant and thus appealable or

---

[4]The NAD Director's determination that an administrative appeal raises an issue of general applicability that is not subject to further USDA review may well be a matter "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), an issue we need not address.  But the county committees' decisions on the merits made final by this NAD determination would clearly be "[a]gency action made reviewable by statute" within the meaning of 5 U.S.C. § 704.

is a matter of general applicability and thus not subject to appeal."). Through this appealability review, participants call upon the NAD to draw on its expertise in interpreting 7 C.F.R. § 780.5 to determine whether a matter is subject to further USDA review. The Producers, however, did not avail themselves of that expertise, and by intentionally bypassing the administrative appeal process and proceeding directly to federal district court, they undermined the purposes of exhaustion and "premature[ly] interfer[ed] with agency processes." *Ace Prop.*, 440 F.3d at 1001 (quoting *Salfi*, 422 U.S. at 765). With respect to the price election issue, interpretation of the SURE Program statute and regulations is, of course, a question within the expertise of the FSA, and of the NAD if it concludes that the issue is administratively appealable and reviews the merits of the FSA's decision. Accordingly, the district court did not err in concluding that the legal question excuse did not excuse the Producers from exhaustion.

## C. Equitable Estoppel

Finally, the Producers argue that the Government should be equitably estopped from asserting the defense of failure to exhaust administrative remedies based on McClure's allegedly misleading statements regarding exhaustion, a contention squarely rejected by the D.C. Circuit in *Deaf Smith*, 162 F.3d at 1214.

As a preliminary matter, we must address the Government's contention that equitable estoppel may not be applied against the government. To be sure, the Supreme Court and this circuit have warned that courts should be cautious when evaluating estoppel claims against the government. *See Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 422 (1990) ("Courts of Appeals have taken our statements as an invitation to search for an appropriate case in which to apply estoppel against the Government, yet we have reversed every finding of estoppel that we have reviewed."); *see also Harding Cnty., S.D. v. Frithiof*, 575 F.3d 767, 777 (8th Cir. 2009) ("[E]stoppel should be used sparingly against the public entities."). Further, "equitable estoppel will not lie against the Government as it lies against private

-12-

litigants." *Richmond*, 496 U.S. at 419. At the same time, however, neither "the Supreme Court [n]or this court [has] accepted the position . . . that the government may not be estopped as a matter of law." *Wang v. Att'y Gen.*, 823 F.2d 1273, 1276 (8th Cir. 1987).

However, while a party's status as a government litigant does not preclude the application of equitable estoppel, it does increase the burden an opposing party must carry in order to prevail on its estoppel claim. "To succeed on a claim of equitable estoppel against the government, a plaintiff must not only prove all the elements of equitable estoppel, but also that the government committed affirmative misconduct." *Charleston Hous. Auth. v. U.S. Dep't of Agric.*, 419 F.3d 729, 739 (8th Cir. 2005). Through this affirmative misconduct requirement, "[t]he Supreme Court has imposed a more stringent standard for estopping the government because there is a strong public interest in upholding the rule of law, even where hardship may result to individuals in particular cases." *Wang*, 823 F.2d at 1276. The claimant bears the "heavy burden" of establishing that the government engaged in affirmative misconduct. *Morgan v. Comm'r*, 345 F.3d 563, 566 (8th Cir. 2003). If a claimant satisfies the affirmative misconduct requirement, he then must prove the four traditional elements of estoppel: (1) a "false representation by the government;" (2) government intent to induce the claimant to act on the misrepresentation; (3) a lack of knowledge or inability to obtain true facts on the part of the claimant; and (4) the claimant's "reliance on the misrepresentation to his detriment." *Rutten v. United States*, 299 F.3d 993, 995 (8th Cir. 2002).

The Producers' estoppel claim fails because they cannot establish that the Government committed affirmative misconduct. "We must determine what constitutes 'affirmative misconduct' by negative implication." *Wang*, 832 F.2d at 1276. Although no precise definition of affirmative misconduct exists outside the

immigration context,[5] our cases make clear that affirmative misconduct is something more than mere negligence. *See, e.g.*, *Ctr. for Special Needs Trust Admin. Inc. v. Olson*, 676 F.3d 688, 698 (8th Cir. 2012) (holding that a mistake in recording a Medicaid applicant's age was not affirmative misconduct); *Morgan*, 345 F.3d at 566-67 (holding that "negligence and possible bad faith" in an IRS officer's representations about tax liability were "insufficient grounds for estoppel").

In an analogous case, we held that an FSA officer's incorrect advice did not constitute affirmative misconduct. *Clason v. Johanns*, 438 F.3d 868 (8th Cir. 2006). In *Clason*, a farmer contended that the government was estopped from requiring him to make physical delivery of grain in order to receive a more favorable repayment rate on a marketing assistance loan after an FSA officer allegedly told him that constructive delivery was acceptable. *Id.* at 872. The court concluded that "[a]t most the FSA officer's comments were the product of negligence," which was insufficient to establish affirmative misconduct. *Id.* Here, the Producers contend that McClure's statements at the Vierkandt Farms hearing and in telephone conversations with Gross, as well as the inclusion of the concluding sentence regarding exhaustion in the FSA county committee letters, amounted to affirmative misconduct. However, as in *Clason*, these allegedly misleading actions were at most the product of negligence, which is insufficient to establish affirmative misconduct.

Even if we were to conclude that the Government potentially committed affirmative misconduct, the Producers' estoppel claim nonetheless would fail because

---

[5]In the immigration context, we have defined affirmative misconduct "as a 'deliberate lie' or 'a pattern of false promises.'" *Mejia-Perez v. Gonzales*, 490 F.3d 1011, 1012 (8th Cir. 2007) (quoting *Varela v. Ashcroft*, 368 F.3d 864, 866 (8th Cir. 2004)). However, we have never adopted this definition outside the immigration context and decline to do so here.

they cannot establish three of the four elements of traditional estoppel.[6] The Producers cannot establish the second element of estoppel because they did not allege any facts suggesting that McClure intended to induce the Producers to rely on the false statement. The Producers also cannot show that they lacked knowledge or were unable to obtain true facts as to whether the concluding sentence in the FSA county committee letters regarding administrative exhaustion was true, as required by the third traditional element of estoppel. Although admittedly inconsistent with the concluding sentence, the body of the county committee letters stated that "[i]f you believe this issue is appealable, you *must* write to either the FSA State Executive Director or the NAD Director . . . and explain why you believe this determination is appealable." (emphasis added). In addition, information about when an adverse decision is appealable and how to appeal an agency's appealability determination to the NAD is readily available online. *See* USDA NAD, "File An Appeal," *available at* http://www.nad.usda.gov/app_appeal.html (providing appeal request forms, instructions on deadlines, and information on what to do if an agency states that an adverse decision is not appealable). Moreover, as the district court found, the Producers "admit[ted] that they knew they were required to exhaust their administrative remedies and . . . they were looking for a way to avoid the requirement." Thus, they had knowledge of the true facts pertaining to administrative exhaustion as well as the ability to research whether McClure had the authority to exempt the Producers from federal statutes and regulations related to exhaustion. Finally, the Producers cannot meet the detrimental reliance element. Although they argue that they relied on the alleged agreement with McClure to their detriment, the district court found that "counsel's reliance on a purported agreement with a government employee to avoid the law is unreasonable." *See Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 63 (1984) (explaining that as a general rule, "those who deal with the Government are expected to know the law and may not

---

[6]The Government concedes that, assuming McClure made the statements that the Producers attribute to him, these statements were false and satisfy the first traditional element of estoppel.

rely on the conduct of Government agents contrary to law"). Therefore, the district court did not err in concluding that equitable estoppel did not bar the Government from asserting the defense of failure to exhaust administrative remedies.

## III. CONCLUSION

Because the Producers are unable to demonstrate that any of the limited exceptions to the administrative exhaustion requirement apply, the district court did not err in dismissing their suit for failure to exhaust. Accordingly, we affirm the district court's grant of the Government's motion to dismiss.

_____