# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 15-1222

———————————————

Higgins Electric, Inc.; Local 57 of the St. Louis District Council of Carpenters of Greater St. Louis and Vicinity

*Plaintiffs - Appellants*

v.

O'Fallon Fire Protection District

*Defendant - Appellee*

——————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

——————

Submitted: September 23, 2015
Filed: February 22, 2016

——————

Before RILEY, Chief Judge, BYE and BENTON, Circuit Judges.

——————

RILEY, Chief Judge.

Higgins Electric, Inc. (Higgins) submitted a bid to perform the electrical work on a new firehouse construction project for the O'Fallon Fire Protection District (District). Despite Higgins submitting what Higgins claims was the lowest bid, the District awarded the work to another contractor. Alleging violations of the United States and Missouri Constitutions and state law, Higgins and Local 57 of the St.

Louis District Council of Carpenters of Greater St. Louis and Vicinity (union) brought an action under 42 U.S.C. § 1983 and Missouri law against the District. The district court[1] dismissed the federal claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and declined to exercise jurisdiction of the state-law claims. Higgins and the union appeal. We affirm.[2]

## I.  BACKGROUND[3]

In the spring of 2014, the District, a subdivision of the state of Missouri, invited contractors to submit bids for the construction of a new firehouse. In its written invitation, the District instructed prospective bidders that the most recent printing of the Recommended Guide for Competitive Bidding Procedures and Contract Awards for Building Construction, published by the American Institute of Architects, (AIA guide) would "guide all bidding." According to the AIA guide, "[t]he contract should be awarded to the lowest responsible bidder," yet the "owner, by provisions in the instructions to bidders . . ., typically retains the right to reject any and all bids" so long as the rejection is not "used as a subterfuge." The District's invitation specified that the District "reserve[d] [the] right to reject any and all proposals when such rejection [wa]s in the interest of the [District]" and clarified that while "[i]t [wa]s the intent of the [District] to award a contract to the lowest responsible bidder," the District "reserve[d] [the] right to select a Bidder other than the lowest." The District also attached two documents authorizing the District to enter into a union-only project labor agreement (PLA).

---

[1]The Honorable Ronnie L. White, United States District Judge for the Eastern District of Missouri.

[2]We have jurisdiction pursuant to 28 U.S.C. § 1291.

[3]We accept as true all facts in the complaint. See, e.g., Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 591 (8th Cir. 2009).

Higgins contends it "submitted the lowest responsible bid for the electrical" work. At all times relevant, Higgins has had a collective bargaining agreement with the union. Higgins alleges that on May 15, 2014, "an agent of the District" informed Higgins "it would not be awarded the work" on the new firehouse "because its employees were represented by the [union] and the [union was] not affiliated with the [American Federation of Labor and Congress of Industrial Organizations (AFL-CIO)]." According to Higgins, the District's agent also asserted the District "was signatory to a [PLA] and that the terms of the PLA barred Higgins from participating in the construction of the Fire House."

On May 27, 2014, the District awarded the electrical work to another contractor that employed members of the Laborers' International Union of North America (laborers). Laborers, Higgins maintains, is not affiliated with the AFL-CIO. Higgins claims that at the time the District received bids "the District had not entered into a PLA."

Higgins and the union, on behalf of its members employed by Higgins, (collectively, appellants) brought this action under 42 U.S.C. § 1983, alleging the District violated the appellants' rights under the Equal Protection and the Due Process Clauses of the Fourteenth Amendment to the U.S. Constitution, as well as their First Amendment right to freedom of association. Appellants also claim the District violated the Missouri Constitution and Missouri Statutes section 321.220(4) (authorizing the District to enter into contracts).

The District moved to dismiss for lack of standing and failure to state a claim upon which relief could be granted. See Fed. R. Civ. P. 12(b)(1), (6). The district court concluded neither Higgins nor the union had standing. "[O]ut of an abundance of caution," the district court also concluded the appellants each failed to state a viable federal constitutional claim. Declining to exercise supplemental jurisdiction, see 28 U.S.C. § 1367(c), the district court dismissed the Missouri law claims without

prejudice. The appellants challenge the dismissal of their federal constitutional claims.

## II. DISCUSSION

### A. Article III Standing

The district court concluded the appellants did not have standing. In doing so, the district court relied in part on several cases addressing whether a disappointed bidder to a government contract has standing under Missouri law.[4] As we decided in Demien Construction Co. v. O'Fallon Fire Protection District, __ F.3d __, __, No. 14-3857, 2016 WL 374422, at *2 (8th Cir. Feb. 1, 2016), we need not analyze standing under Missouri law because appellants invoke federal jurisdiction based on the existence of a federal question, see 28 U.S.C. § 1331, not the diversity of the parties, see 28 U.S.C. § 1332(a)(1).

Dismissal of appellants' claims for lack of standing is subject to de novo review. See Nat'l Fed'n of the Blind of Mo. v. Cross, 184 F.3d 973, 979 (8th Cir. 1999). "Article III standing must be decided first by the court and presents a question of justiciability; if it is lacking, a federal court has no subject-matter jurisdiction over the claim." Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 934 (8th Cir. 2012). "[T]he irreducible constitutional minimum" of Article III standing requires, first, "an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent.'" Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal citations omitted). "Second, there must be a causal connection between the injury and the conduct complained of" so that the injury is "'fairly . . . trace[able] to the challenged action of the defendant.'

---

[4]See Brannum v. City of Poplar Bluff, 439 S.W.3d 825, 829 (Mo. Ct. App. 2014); Pub. Commc'ns Servs., Inc. v. Simmons, 409 S.W.3d 538, 546 (Mo. Ct. App. 2013); Metcalf & Eddy Servs., Inc. v. City of St. Charles, 701 S.W.2d 497, 499 (Mo. Ct. App. 1985); La Mar Constr. Co. v. Holt Cnty., R-II Sch. Dist., 542 S.W.2d 568, 570-71 (Mo. Ct. App. 1976).

Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. at 560-61 (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 38, 41-42, 43 (1976)).

Reviewing these requirements, we conclude Higgins has standing. Cf. Metro. Express Servs., Inc. v. City of Kansas City, 23 F.3d 1367, 1370 (8th Cir. 1994).

As to the union, "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members."[5] Warth v. Seldin, 422 U.S. 490, 511 (1975). To obtain standing "on behalf of its members," the union must demonstrate "(a) its members would otherwise have standing to sue in their own right; (b) the interests [the union] seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977).

Here, we need not decide whether the union has satisfied the first and second prongs of Hunt because the union cannot satisfy the third requirement. See id. The union's claim for compensatory damages "is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." Warth, 422 U.S. at 515-16; cf. United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc., 517 U.S. 544, 546 (1996) (explaining that unless "Congress intended to abrogate" the "standing limitation" that "an association's action for damages running solely to its members [is] barred for want of the association's standing to sue," the limitation is "otherwise applicable"). We conclude the union does not have standing in this case to pursue its claims on behalf of its members.

---

[5]Appellants claim the union has standing on its own behalf, but this contention contradicts their Second Amended Complaint, in which they state the union "bring[s] this action on behalf of the class of its members who are employed by Higgins."

**B.     Motion to Dismiss**

We next consider whether Higgins has stated a cause of action under § 1983 based on violations of the Fourteenth and First Amendments.  See Fed. R. Civ. P. 12(b)(6).  "We review '*de novo* the grant of a motion to dismiss, taking all facts alleged in the complaint as true.'" Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010) (quoting Owen v. Gen. Motors Corp., 533 F.3d 913, 918 (8th Cir. 2008)).  We affirm the district court's dismissal if the complaint fails "to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Fed. R. Civ. P. 8(a)(2).

**1.     Equal Protection**

Higgins alleges the District, acting under the color of state law, violated its rights under the Equal Protection Clause of the Fourteenth Amendment by "arbitrarily and maliciously treat[ing] [it] differently from other similarly situated electrical contractors."  Higgins does not dispute the district court's conclusion that electrical contractors are not "members of a protected class" under the Equal Protection Clause. Gallagher v. City of Clayton, 699 F.3d 1013, 1018 (8th Cir. 2012) (describing the characteristics of suspect classes).  Rather, Higgins advances its equal protection claim under a class-of-one theory.  See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam).

"A class-of-one claim is stated when a plaintiff alleges that a defendant intentionally treated [it] differently from others who are similarly situated and that no rational basis existed for the difference in treatment."  Mathers v. Wright, 636 F.3d 396, 399 (8th Cir. 2011). To state a class-of-one claim, the "'plaintiff must . . . provide a specific and detailed account of the nature of the preferred treatment of the favored class, especially when the state actors exercise broad discretion to balance a number of legitimate considerations.'"  Robbins v. Becker, 794 F.3d 988, 996 (8th Cir. 2015) (quoting Nolan v. Thompson, 521 F.3d 983, 990 (8th Cir. 2008)).

-6-

Relying on Olech, 528 U.S. at 564, Higgins seems to argue that "[b]ecause the District gave false reasons" as to why the District did not award the work to Higgins, the District subjected Higgins to "irrational and intentional differential treatment when compared with similarly situated individuals." But nothing in Higgins's pleadings alleges another contractor, whose employees were members of a different union, was "'identical or directly comparable to [Higgins] in all material aspects.'" Robbins, 794 F.3d at 996 (quoting Reget v. City of La Crosse, 595 F.3d 691, 695 (7th Cir. 2010)).

Furthermore, "a class-of-one claim does not extend to cases where the rules are uniformly applicable and a state official exercises his 'discretionary authority based on subjective, individualized determinations.'" Novotny v. Tripp County, 664 F.3d 1173, 1179 (8th Cir. 2011) (quoting Engquist v. Or. Dep't of Agric., 553 U.S. 591, 602 (2008)); cf. Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc., 682 F.3d 1293, 1298 (11th Cir. 2012) (per curiam) (observing, "Every government-run bid process" "involves winners and losers: selection of a winner inherently involves a kind of discrimination in itself"). Here, the District explicitly reserved the right to award the contract "in [its] best interest," and "to select a Bidder other than the lowest." Higgins has not stated an equal protection claim.

### 2. Due Process

Higgins next challenges the district court's conclusion that Higgins failed to demonstrate a property interest to support its due process claim. See Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972) (establishing the requirements of a due process claim). Higgins's argument is foreclosed by our decision in Demien Construction. As we explained in Demien Construction, under Missouri law, an unsuccessful bidder obtains no property right in the award of a construction contract. See __ F.3d __, __, 2016 WL 374422, at *3. Higgins cannot overcome the fact that, in the District's invitation to bid, the District "reserve[d] [the] right to select a Bidder other than the lowest," and "reserve[d] the right to reject any and all proposals." See

<u>Lar Mar Constr.</u>, 542 S.W.2d at 570. Higgins failed to state a claim for deprivation of due process.

### 3. Freedom to Associate

Higgins last argues the District targeted and interfered with Higgins's First Amendment right to freedom of association because Higgins was "not signatory to a collective bargaining agreement with Local 1 of the International Brotherhood of Electrical Workers." But Higgins does not provide any plausible account of how the District interfered with Higgins's ability to associate with the union or with its employees who are members of the union. <u>Cf.</u> <u>Hanten v. Sch. Dist. of Riverview Gardens</u>, 183 F.3d 799, 806 (8th Cir. 1999) (declaring "a governmental preference for union labor in the construction industry . . . does not 'directly or substantially interfere' with the rights of laborers to refrain from joining a union" (quoting <u>Lyng v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.</u>, 485 U.S. 360, 366 (1988))). Higgins did not state a violation of the First Amendment.

## III. CONCLUSION

We affirm the judgment of the district court.

_____