# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2017

_____

Renee S. Williams, Bankruptcy Trustee (originally named as Seneca Thornton)

*Plaintiff - Appellee*

v.

Dean Mannis, Individually and in His Official Capacity

*Defendant - Appellant*

Arkansas Municipal League; Stuttgart Police Department; Mike Smith, Police Chief, Individually and in His Official Capacity; Steven Bobo, Deputy Police Chief, Individually and In His Official Capacity; City of Stuttgart; Arkansas County; Arkansas County Sheriff's Department; Alan Cheek, Sheriff, Individually and In His Official Capacity; Bobby Dumond, Individually and In His Official Capacity; Lloyd Pace, Individually and In His Official Capacity; Arkansas State Police; Scott Russell, Individually and In His Official Capacity

*Defendant*s

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff

_____

Submitted: March 13, 2018
Filed: May 10, 2018

_____

Before WOLLMAN, SHEPHERD, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

In 2014, Seneca Thornton was employed as a patrol officer by the Stuttgart (Arkansas) Police Department. On August 19, 2014, he was summoned into the Arkansas County (Arkansas) prosecutor's office and informed that "audio and video evidence" suggested that Thornton had purchased Xanax illegally from a confidential informant. In spite of this evidence, the prosecutor told him that because the police chief "had a lot on his plate," the prosecution was willing to forego any charges if Thornton would "just resign and turn in his badge . . . and he would be free to go work somewhere else." Thornton declined the invitation to resign and was eventually both fired and charged in the Arkansas County Circuit Court with purchasing Xanax from a confidential informant. At trial Thornton was acquitted of all charges.

Thornton brought this action[1] against the City of Stuttgart, the Arkansas Municipal League, Arkansas County, three law enforcement agencies, and several law enforcement officers from the agencies involved in the investigation. Thornton alleges that Appellant Dean Mannis and other law enforcement defendants conspired to destroy Thornton professionally and personally by framing him on knowingly false drug charges. Thornton claims that the defendants were motivated by a racial animus as he was the only African-American patrol officer employed by the Stuttgart Police Department.

A number of defendants were dismissed out of the case on motion for various reasons, and eventually summary judgment was sought by Mannis, the City of Stuttgart, Stuttgart Police Department Chief of Police Mike Smith, Stuttgart Police Department Deputy Police Chief Steven Bobo, and Arkansas State Police Special

---

[1]Thornton originally commenced this action. The Bankruptcy Trustee, Renee S. Williams, was substituted as the real party in interest after the City of Stuttgart and Arkansas County raised a concern that Thornton lacked standing because of his bankruptcy petition and that the real party in interest was the Bankruptcy Trustee.

Agent Scott Russell.   The motion was granted as to all defendants but Mannis. Mannis sought summary judgment on theories of qualified immunity and state statutory immunity.  The district court denied Mannis's motion in part and allowed to proceed a claim under 42 U.S.C. § 1983 for deliberate conduct that shocks the conscience and a state law claim for outrage.

We have jurisdiction over this interlocutory appeal of a denial of qualified immunity because it involves a question of law.  See Jackson v. Gutzmer, 866 F.3d 969, 975 (8th Cir. 2017) ("The pretrial denial of qualified immunity is an appealable final order to the extent it turns on an issue of law.").   We have supplemental jurisdiction on the state statutory immunity claim. See Trammell v. Wright, 2016 Ark. 147, 489 S.W.3d 636, 638 (Ark. 2016) (interlocutory appeal of denial of immunity is allowed as "the right of immunity from suit is effectively lost if a case is permitted to go to trial").  We reverse.

## I.    Background

We view the facts in a light most favorable to Thornton, the non-moving party. Dean Mannis was a detective with the Stuttgart Police Department.  He also was the employer of a housekeeper and erstwhile confidential informant, Jennifer Carpenter. In March 2014, Carpenter told Mannis that she was familiar with Thornton from his prior work at Wal-Mart and that she knew he had been involved with illegal drugs three or four years earlier.  She intimated that she was willing to see if Thornton would illegally purchase drugs from her.  Carpenter's motivation was plain: she was facing two pending felony drug cases, and she wanted to help herself out.  Mannis's motivations are disputed, but he had suspicions that Thornton was living beyond his apparent means as a patrol officer.

A few days later, Carpenter told Mannis that she had received text messages from Thornton asking for Xanax.[2] Mannis helped arrange a controlled sale, and on March 9, 2014, a meeting took place between Carpenter and Thornton. Prior to the meeting, Carpenter and the vehicle she was driving were searched, and law enforcement confirmed that she was in possession of Xanax. When Carpenter arrived at Thornton's house, he was in the front yard talking to a neighbor. Thornton walked over to the vehicle, opened the front passenger door, stuck his head inside, and spoke to Carpenter for a short time before she drove away. According to Thornton, Carpenter said she was running low on gas and had to leave. Following the encounter, Carpenter and the vehicle were searched again, and no Xanax pills were found. Law enforcement did not stop Thornton or make any attempt to verify that he was in possession of the Xanax. Thornton denies ever receiving Xanax from Carpenter.

Shortly after the initial encounter, Carpenter told Mannis that Thornton was interested in buying more Xanax. After speaking to Thornton on the phone, Carpenter and Thornton met at the Wal-Mart parking lot on March 27, 2014. Thornton testified that, during the phone call, Carpenter told him she was going through some personal problems and that she wanted to talk to him. Once again Carpenter was searched, given Xanax, and dropped off at the store by law enforcement. A short time later, Thornton arrived, and when Carpenter saw him, she exited the store and got into his car. According to Thornton, Carpenter told him she was shopping with a friend and needed to go back into the store. She exited the vehicle and was shortly thereafter searched, and no Xanax was found on her. Thornton denies having received any Xanax, and he was never searched or stopped by law enforcement. While efforts had been made to obtain audio and video surveillance of the alleged transaction, no usable evidence was obtained.

_____

[2]Thornton denies that he sent the text messages. The text messages were never received in the criminal trial because the phone number was never established as having any connection to Thornton.

When Thornton was summoned to the Arkansas County Attorney's office, he met with prosecuting attorney Robert Dittrich who informed him that he was the subject of a drug investigation. Dittrich indicated the county was interested in resolving the matter quietly and if he were willing to "quietly resign," they would see to it that they did not limit his ability to work. Thornton refused to resign, and in early September 2014, Mannis obtained an arrest warrant. Thornton voluntarily surrendered as soon as he became aware of the warrant. He was charged in Arkansas County Circuit Court with obtaining a controlled substance by fraud, a felony; unlawful use of a communication device, a felony; and possession of alprazolam, a misdemeanor. Thornton was fired by the Stuttgart Police Department the next day.

Thornton's case was tried to a jury in January 2015. Neither felony charge survived a motion for judgment of acquittal at the close of the state's evidence. The jury deliberated for only forty-four minutes before returning a not guilty verdict on the remaining misdemeanor charge. Following the acquittal, Thornton was rehired by the Stuttgart Police Department. According to Thornton, after he was rehired, three individuals approached Thornton and told him to "watch his back" because Sergeant Mike Wallace was trying to set him up in another drug sting.

Thornton filed this § 1983 action against the thirteen named defendants. During his deposition, Thornton admitted that his claims against Mannis were speculative. He testified that rather than having evidence of a conspiracy between Mannis and other officers, he "just [has] a feeling." When asked whether he was "speculating that [Mannis and Special Agent Russell] might have been involved in some operation against [him]," Thornton replied, "Correct."

In denying qualified immunity for Mannis on the § 1983 claim for deliberate conduct that shocks the conscience and statutory immunity on the state law outrage claim, the district court stated:

Plaintiff has presented sufficient evidence to support his claim that Mannis concocted the drug-buy scheme to set Plaintiff up on false drug charges. The Court finds that a reasonable officer in Mannis' position would have known that using a drug-buy scheme to set-up a fellow officer with drug charges and obtaining a warrant for his arrest based on this scheme would deprive Plaintiff of a known constitutional right. Mannis' conduct violated a clearly established constitutional right because it was clearly established that the Fourth Amendment required probable cause to support an arrest and a drug-buy scheme set-up by Mannis to frame or implicate Plaintiff on false charges, would defeat probable cause. Such conduct would be [conscience] shocking such to support Plaintiff's substantive due process claim and his Arkansas claim of outrage. Additionally, these facts are sufficient to defeat the statutory immunity provided by Arkansas law against Plaintiff's state law claim.

Thornton v. City of Stuttgart, No. 5:15CV0303 JM, 2017 WL 5899723, at *5 (E.D. Ark. Apr. 21, 2017). Mannis appeals the denial of qualified and statutory immunity.

## II.    Discussion

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To survive a motion for summary judgment, the nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" Barber v. C1 Truck Driver Training, LLC, 656 F.3d 782, 801 (8th Cir. 2011) (alterations in original) (quoting Putman v. Unity Health Sys., 348 F.3d 732, 733–34 (8th Cir. 2003)). Qualified immunity is appropriate where no reasonable fact finder could conclude that the facts when viewed in a light most favorable to the plaintiff show that the officers' conduct violated a clearly established constitutional right. S. L. ex rel. Lenderman v. St. Louis Metro. Police Dep't. Bd. of Police Comm'rs, 725 F.3d 843, 850 (8th Cir. 2013) (citing Nance v. Sammis, 586 F.3d 604, 609 (8th Cir. 2009)).

A. **Section 1983 Claim**

We review *de novo* the denial of a motion for summary judgment on the issue of qualified immunity. De La Rosa v. White, 852 F.3d 740, 743 (8th Cir. 2017). To determine whether Mannis is entitled to qualified immunity, we ask: (1) whether his conduct violated a constitutional right; and (2) whether the violated right was clearly established. Manning v. Cotton, 862 F.3d 663, 668 (8th Cir. 2017) (citing Borgman v. Kedley, 646 F.3d 518, 522 (8th Cir. 2011)). A clearly established right exists when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. (alterations in original) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "When a defendant asserts qualified immunity at the summary judgment stage, the plaintiff must produce evidence sufficient to create a genuine issue of fact regarding whether the defendant violated a clearly established right." Id. at 667 (quoting Bishop v. Glazier, 723 F.3d 957, 961 (8th Cir. 2013)). Qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

The Fourteenth Amendment guarantees substantive due process and prohibits government "conduct that is so outrageous that it shocks the conscience or otherwise offends judicial notions of fairness, [or is] offensive to human dignity." Moran v. Clarke, 296 F.3d 638, 643 (8th Cir. 2002) (en banc) (alteration in original) (internal quotation marks omitted) (quoting Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998) (en banc)). Pursuing the criminal conviction of an innocent person may be "so severe as to shock the conscience." Keefe v. City of Minneapolis, 785 F.3d 1216, 1223 (8th Cir. 2015) (citing Moran, 296 F.3d at 639–47).

Thornton has failed to demonstrate sufficient facts to give rise to a triable question as to an alleged violation of a constitutional right. While law enforcement

corruptly conducting an investigation with a view towards presenting knowingly false charges against an innocent person might well represent an instance of conscience-shocking behavior, Thornton has not presented any evidence beyond surmise that would allow a reasonable finder of fact to conclude that this happened. Thornton admitted as much in his deposition when he stated that his conspiracy theory was based on "just . . . a feeling" instead of actual evidence and when he admitted that his claim was speculative. While Thornton suspects that Mannis is prejudiced against him because of his race and because of his lifestyle, these suspicions are insufficient to give rise to a claim of a constitutional magnitude.

Thornton emphasizes his acquittal, ignoring the reality that a judge properly found that probable cause existed to issue an arrest warrant. Carpenter, an informant who had previously proven reliable, told Mannis that Thornton was a past drug user who wanted to purchase Xanax illegally. On one of the two occasions that Thornton allegedly purchased drugs from Carpenter, he showed up at the expected time and in the expected vehicle. Both times he had a very brief conversation with Carpenter. Beforehand, she had Xanax in her possession; afterward, searches of her person and vehicle turned up empty. The fact that Thornton was not searched for Xanax after the alleged buys might have contributed to his acquittal, but it does not defeat probable cause. Under these facts, the district court erred in denying qualified immunity to Mannis.

### B.     State Law Outrage Claim

Mannis also argues that the district court erred by denying him state statutory immunity from the state law outrage claim. Arkansas Code Annotated section 21-9-301 "provides city employees with immunity from civil liability for negligent acts, but not for intentional acts." Trammell, 489 S.W.3d at 639. The Arkansas Supreme Court has stated the elements of an outrage claim as follows:

To establish an outrage claim, a plaintiff must demonstrate the following elements: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.

Crockett v. Essex, 341 Ark. 558, 19 S.W.3d 585, 589 (Ark. 2000) (internal quotation marks omitted) (quoting McQuay v. Guntharp, 331 Ark. 466, 963 S.W.2d 583, 585 (Ark. 1998)).

Thornton's state law claim fails for the same reason as the federal claim. Mannis is entitled to state law statutory immunity because the allegations are based on surmise and because the evidence fails to show that Mannis intended to inflict emotional distress or engage in outrageous conduct. The district court erred in denying summary judgment for Mannis on the ground of state statutory immunity.

## III.  Conclusion

For the foregoing reasons, we reverse the district court's denial of qualified immunity and state statutory immunity and remand for entry of summary judgment for Mannis on the remaining claims against him.

_____