# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-2867
_____

J. B. Turner

*Plaintiff - Appellant*

v.

XTO Energy, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Arkansas - Ft. Smith

_____

Submitted: January 14, 2021
Filed: February 25, 2021

_____

Before COLLOTON, WOLLMAN, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

J.B. Turner appeals the district court's[1] grant of summary judgment in favor of XTO Energy, Inc. on Turner's claims of breach of contract and conversion. We affirm.

_____

[1]The Honorable P. K. Holmes, III, United States District Judge for the Western District of Arkansas.

In 1980, the Arkansas Oil and Gas Commission (Commission) permitted XTO Energy's predecessors in interest to drill a well on Turner's drilling unit[2] in Franklin County, Arkansas. The Turner No. 1 Well was drilled to extract gas from two different geologic formations—the Hale Formation and the deeper Viola Formation—through the casing zone and the tubing zone respectively. The tubing zone consists of a smaller pipe, or string, that runs within the well's outer pipe or "casing." The production from the two zones is metered separately at the well head. Under the Commission's order, the gas from the two zones is not to be commingled because Turner's interests in the extracted gas differ depending on the formation from which it is extracted.

In 2016, Turner alleged that the gas from the two zones was being impermissibly commingled. The Commission ordered that the well cease production until the alleged commingling could be corrected. After the well was shut in, testing revealed that the pressures between the tubing zone and casing zone were equalized, suggesting that gas was flowing into the surface pipeline from both zones. It is undisputed that the well has continued to extract gas from the Hale Formation through the casing zone since the well was drilled.

As relevant to this appeal, Turner filed suit in Arkansas state court for breach of contract and conversion of payment. He argued that the equalized pressures between the zones are evidence that the Viola Formation is still producing gas through the Turner No. 1 Well and that he has not been paid for those extractions. XTO Energy removed the case to federal court on the basis of diversity jurisdiction and maintains that the well ceased producing gas from the Viola Formation through the tubing zone in 1982. After the close of discovery, XTO Energy moved for

_____

[2]A drilling "unit" is a set amount of acres designated by the Commission that will be impacted by the drilling of a well. Such a designation ensures that all mineral owners potentially impacted by the producing well will receive proper compensation. D. Ct. Order Aug. 6, 2019.

summary judgment. The district court determined that there was no genuine dispute that the Viola Formation had not been capable of production after 1982 and thus granted summary judgment in XTO Energy's favor.

We review the district court's grant of summary judgment *de novo*. Dick v. Dickinson State Univ., 826 F.3d 1054, 1058 (8th Cir. 2016) (standard of review). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and [XTO Energy] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the non-moving party, Turner "is entitled to all reasonable inferences—those that can be drawn from the evidence without resort to speculation." Sprenger v. Fed. Home Loan Bank of Des Moines, 253 F.3d 1106, 1110 (8th Cir. 2001) (internal citation and quotation marks omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [factfinder] could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). We conclude that Turner cannot survive summary judgment on his breach of contract or conversion claims because he has not set forth sufficient evidence to allow a factfinder to find that the Turner No. 1 Well has extracted gas from the Viola Formation after 1982.

XTO Energy's contention that the Viola Formation watered out in the Turner No. 1 Well in 1982 and that it remained flooded with water in 2018 is supported by undisputed evidence in the record. In a geologic formation similar to that of the Viola Formation, natural gas sits above the water because it is less dense. As gas is extracted and the pressure in the formation lowered, the water level in the formation rises. When the water level rises above the well's perforations, the well "waters out" and ceases to produce gas. According to Shana Wells, XTO Energy's in-house geologist, the rising water level caused the Viola Formation in the tubing zone of the Turner No. 1 Well to water out in or around November 1982. Records show that around the same time other wells perforating the Viola Formation within a two-mile radius of the Turner No. 1 Well also watered out. One of those wells perforated the

Viola Formation only ten feet below the Turner No. 1 Well's perforations. According to Timothy Isernhagen, XTO Energy's in-house reservoir engineer, testing in 2018 also showed "a water column in the tubing . . . 7,498 feet above the perforations into the Viola [Formation]" indicating that the "Viola Formation in the [Turner No. 1 Well] is fully saturated with water." Turner has not offered any evidence or expert analysis to the contrary.

Despite this undisputed evidence, Turner insists that there is a genuine dispute of material fact whether the Viola Formation has produced gas through the Turner No. 1 Well since 1982 based on the following allegations: (1) the well recorded a spike in production in 1999, (2) records from after June 2001 show equalized pressure between the well's two zones, and (3) several pressure tests conducted in 1996, 1997, and 1998 list "Tubing" as the zone through which the well was producing. When considered in the context of entire record, however, these facts do not establish a genuine dispute whether the Viola Formation has produced gas since 1982.

XTO Energy's records for the Turner No. 1 Well consistently show that between 1982 and 2001 the pressure in the tubing zone was significantly lower than the pressures in the casing zone and the surface pipeline. For some unknown reason, gas production from the Turner No. 1 Well spiked in 1999. Turner's contention that this spike is evidence that the Viola Formation was producing ignores the expert analysis in the record. Reservoir engineer Isernhagen explained that, whatever the cause, the additional gas in the pipeline could not have come from the Viola Formation through the tubing zone because the pressure in the tubing zone was consistently lower than the pressure in the surface pipeline throughout 1999. Turner offers no response to Isernhagen's assertion that "[i]t is physically impossible for gas to flow from a point of lower pressure to a point of higher pressure" without a compressor.

-4-

In June 2001, XTO Energy's records began to show equalized pressures between the tubing zone and the casing zone. Turner contends that because that pressure was sufficient to produce gas from the Hale Formation through the casing zone, there is a fact question whether the Viola Formation was producing after 2001. Turner once again ignores and fails to dispute the other evidence in the record, such as higher levels of water in the tubing string, that supports XTO Energy's contention and Isernhagen's professional opinion that a recently developed hole in the tubing string better explains the equalized pressures. Such a hole would allow gas extracted from the Hale Formation through the casing zone to flow into the tubing zone. Thus, the record shows that, although the equalized pressures may be evidence of gas in the tubing zone, the equalized pressures alone do not show that that gas was produced from the Viola Formation. See Anderson, 477 U.S. at 252.

Finally, Turner points to pressure tests conducted by a third party, Seagull Energy E & P, in 1996, 1997, and 1998 that indicate that the well was producing through the "Tubing" zone. Turner ignores the other three notations on the same forms that unambiguously state that the tests were performed on the casing zone, which was producing from the Hale Formation. He also ignores the Seagull test-conducting employee's affidavit, which states that the forms "incorrectly indicate that the [zone] being testing was the 'tubing' pipe string." Because Turner has not refuted the record's contextual evidence that suggests that "tubing" was likely a typographical error, these forms alone are insufficient to demonstrate a genuine dispute of material fact.

Conclusion

On summary judgment we view "the facts and the inferences to be drawn from them in the light most favorable to [Turner]," but such facts "must be properly supported by the record." P.H. v. Sch. Dist. of Kan. City, 265 F.3d 653, 656–57 (8th Cir. 2001) (internal citations omitted). Turner does not dispute the portions of the

-5-

record which establish that the Viola Formation watered out in the Turner No. 1 Well in 1982 and remained flooded in 2018. As discussed above, the evidence on which Turner relies fails to demonstrate a genuine dispute whether, despite being flooded, the Viola Formation was either capable of producing or did produce gas through the Turner No. 1 Well after 1982. See Williams v. Mannis, 889 F.3d 926, 931 (8th Cir. 2018) ("To survive a motion for summary judgment, the nonmoving party must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor based on more than mere speculation, conjecture, or fantasy." (internal quotation marks and brackets removed) (quoting Barber v. C1 Truck Driver Training, LLC, 656 F.3d 782, 801 (8th Cir. 2011))). Summary judgment was thus appropriately granted.

In light of the absence of a genuine dispute of material fact whether the Viola Formation produced after 1982, we need not reach the question whether Turner's claims are time barred under Arkansas law. The district court's judgment is affirmed.

_____