# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2581
_____

Robert Bruning; Sharon Bruning, a married couple

*Plaintiffs - Appellants*

v.

City of Omaha, Nebraska

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: June 16, 2021
Filed: July 27, 2021

_____

Before GRUENDER, ARNOLD, and STRAS, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Robert and Sharon Bruning sued the City of Omaha, Nebraska, challenging Omaha's enforcement of its zoning regulations against them. The district court[1] granted summary judgment in favor of Omaha. The Brunings appeal, and we affirm.

---

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska, now deceased.

## I.

In 1979, the Brunings purchased a property in Omaha that was zoned for agricultural use. The Brunings sold their agricultural businesses in 2004 and began leasing the property to other commercial entities. The Brunings allege that an Omaha official assured them in 2009 that their operations complied with Omaha's zoning regulations.

In 2015, Omaha received a noise complaint related to commercial activity at the Brunings' property. Upon investigation, Omaha determined that the commercial uses of the property violated zoning regulations and that none of the ten buildings on the property complied with Omaha's building code. For several months, the parties discussed options for remedying the violations. But the discussions proved unfruitful, and after nearly five months had elapsed without correspondence from the Brunings, Omaha sent the Brunings an email on November 1, 2016, indicating that it would be issuing them a notice to vacate the property within five days. After conferring with the Brunings' counsel, Omaha agreed to postpone enforcement while the Brunings petitioned the City of Omaha Zoning Board of Appeals for a variance.

Before the Zoning Board of Appeals, the Brunings identified eight other properties in the city that they claimed had not been subject to enforcement action despite being in violation of Omaha's zoning regulations. Omaha subsequently sent seven of the eight property owners a letter ordering them to cease nonconforming operations within thirty days. Because the address that the Brunings provided for the remaining property ("Property 2") was invalid, Omaha inspected the property closest to where the invalid address would have been located, but it found no violations. The Zoning Board of Appeals denied the Brunings' petition for a variance. The Brunings appealed the decision in Nebraska state court, but the trial court upheld the decision and the Nebraska Supreme Court affirmed. *See Bruning v. City of Omaha Zoning Bd. of Appeals*, 927 N.W.2d 366, 368 (Neb. 2019).

The Brunings then sued in federal court. In their complaint, they alleged that the eight properties they had identified previously, as well as two additional properties ("Property 9" and "Property 10"), had not been subject to enforcement action despite being in violation of Omaha's zoning regulations. Omaha had no record of anyone complaining about Property 9. Property 10 was the property that was adjacent to where Property 2 would have been located if it existed and that Omaha had already inspected and found to be in compliance.

Both parties moved for summary judgment. By the time the district court ruled on the motions, the Brunings' only remaining claims were that Omaha's enforcement actions (1) violated the Equal Protection Clause, (2) were equitably estopped, and (3) constituted an unlawful taking of their property. In its first summary-judgment order, the district court noted that Omaha had failed to respond to the Brunings' statement of material facts in the format required by local rules but indicated that it would rely on the arguments in Omaha's briefs "to discern what facts [we]re [genuinely] in dispute." The district court then granted summary judgment for Omaha on the Brunings' equitable-estoppel and taking claims. Regarding the Brunings' equal-protection claim, however, the district court concluded that it lacked sufficient evidence to grant summary judgment for either party. Accordingly, the district court announced that it would hold an evidentiary hearing to give the parties an opportunity to present additional evidence. After the hearing, the district court issued a second order granting summary judgment for Omaha on the Brunings' equal-protection claim. The Brunings appeal the district court's grant of summary judgment for Omaha on their equal-protection and equitable-estoppel claims.[2]

---

[2]The Brunings' opening brief contains no discussion of their taking claim, which we deem to be waived. *See Chavero-Linares v. Smith*, 782 F.3d 1038, 1040 (8th Cir. 2015).

## II.

We review the district court's grant of summary judgment *de novo*. *Turner v. XTO Energy, Inc.*, 989 F.3d 625, 627 (8th Cir. 2021). Summary judgment is appropriate if the movant is entitled to judgment as a matter of law even when all genuine factual disputes are resolved in the nonmovant's favor. *Id.*

### A.

We begin with the equal-protection claim. The parties agree that the Brunings are bringing a "class-of-one" equal-protection claim. *See Robbins v. Becker*, 794 F.3d 988, 995 (8th Cir. 2015) (defining a "class-of-one" claim as one that does not allege that the government targeted the plaintiff because of his "membership in a class or group"). Omaha suggests that the Brunings' claim fails at the outset because zoning-enforcement decisions, like police officers' decisions about whom to ticket when multiple drivers are speeding, are exercises of discretion "based on a vast array of subjective, individualized assessments" and are therefore generally immune from "class-of-one" equal-protection challenges. *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603-04 (2008). We do not reach this argument here. Like the district court, we agree with Omaha's argument in the alternative that the Brunings' claim fails even assuming zoning-enforcement decisions are susceptible to class-of-one challenges.

To prevail on a class-of-one equal-protection claim, a plaintiff must prove that the government intentionally and with no rational basis treated him less favorably than others. *Robbins*, 794 F.3d at 995. Any material difference between how the plaintiff and those allegedly treated more favorably are situated is sufficient to provide a rational basis for the differential treatment. *See Higgins Elec., Inc. v. O'Fallon Fire Prot. Dist.*, 813 F.3d 1124, 1129 (8th Cir. 2016) (indicating that differential treatment is not "irrational" unless those treated more favorably were "identical or directly comparable to [the plaintiff] in all material aspects"). "A class-of-one plaintiff must therefore provide a specific and detailed account of the nature

-4-

of the preferred treatment of the favored class, especially when the state actors exercise broad discretion to balance a number of legitimate considerations." *Robbins*, 794 F.3d at 996 (internal quotation marks omitted).

The Brunings identify three ways in which Omaha allegedly treated them worse than the ten comparator property owners the Brunings identified in their complaint. As explained below, even assuming Omaha intentionally treated the Brunings differently in these ways, the Brunings have not shown that they were "identical or directly comparable" to the comparator property owners in every respect that is material to the differential treatment. *See Higgins Elec.*, 813 F.3d at 1129. Therefore, the Brunings have not shown that Omaha lacked a rational basis for the differential treatment.

First, the Brunings claim that the most Omaha ordered the comparator property owners to do was to cease nonconforming uses, whereas Omaha ordered the Brunings not only to cease nonconforming uses but also "to bring all of the structures" on their property "up to current code." But the Brunings have not shown that Property 2 existed at all, let alone that it exhibited any building-code violations. Nor have they shown that Property 10, which Omaha inspected and found to be in compliance, exhibited any building-code violations. As for the remaining eight properties, the Brunings have not shown that they exhibited building-code violations that were identical to, or at least as numerous and serious as, the violations on the Brunings' property. Additionally, even assuming Property 9 did exhibit such violations, Omaha has no record of receiving a complaint about that property that was similar to the complaint that Omaha received about the Brunings' property. Therefore, the Brunings have not shown that they were "identical or directly comparable" to any of the comparator property owners in every respect that was material to Omaha's decision to enforce the building code against the Brunings. *See id.*

Second, the Brunings claim that Omaha gave the comparator property owners to whom it sent a letter thirty days to comply, whereas Omaha notified the Brunings

that it would be issuing them a notice giving them only five days to vacate their property. But Omaha sent the Brunings this notification more than a year after it had initially notified them of the violations on their property. The Brunings have not shown that Omaha had been in contact with any of the comparator property owners about their violations at all, let alone for more than a year, prior to sending the cease-and-desist letters. Therefore, the Brunings have not shown that they were "identical or directly comparable" to any of the comparator property owners in every respect that was material to Omaha's decision to warn the Brunings that it would be issuing them a notice giving them only five days to vacate their property. *See id.*

Third, the Brunings claim that, after the initial notice of violation, Omaha waited more than three years before notifying the comparator property owners that it would be issuing them a notice to vacate, whereas Omaha notified the Brunings that it would be issuing them a notice to vacate approximately eighteen months after first notifying them of their violations. As Omaha pointed out at oral argument, however, at the time the Brunings filed their complaint, less than fifteen months had elapsed since Omaha had sent the letters to the comparator property owners. And, at any rate, the Brunings presented no evidence that Omaha waited more than five months without hearing from the comparator property owners after attempting to engage them in a discussion of options for remedying the violations. Therefore, the Brunings have not shown that they were "identical or directly comparable" to any of the comparator property owners in every respect that was material to Omaha's decision to notify the Brunings roughly eighteen months after the initial notice of violation that they would be required to vacate their property. *See id.*

The Brunings also raise three non-merits-based objections to the district court's grant of summary judgment for Omaha on their equal-protection claim. First, the Brunings argue that we should reverse because, at one point in its second summary-judgment order, the district court confused correspondence between Omaha and one of the comparator property owners for correspondence between Omaha and the Brunings. But even assuming this error rendered the district court's basis for granting summary judgment unsound, "[w]e may affirm on any basis

supported by the record," *Mead v. Intermec Techs. Corp.*, 271 F.3d 715, 716 (8th Cir. 2001). The basis that we have articulated is supported by the record and free from the alleged error in the district court's order.

Second, the Brunings argue that even if evidence submitted after the district court's first order establishes Omaha's entitlement to summary judgment, the district court erred in giving Omaha a second bite at the apple after it had failed to attach this evidence to its initial motion for summary judgment. But Federal Rule of Civil Procedure 56(e)(1) provides that, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact" in its summary-judgment filings, "the court may . . . give [that party] an opportunity to properly support or address the fact." Therefore, the district court did not err by postponing its summary-judgment ruling on the Brunings' equal-protection claim until after an evidentiary hearing where both parties would have an opportunity to present additional evidence.

Third, the Brunings argue that the district court should have granted their motion for summary judgment—and thus, by implication, denied Omaha's motion for summary judgment—because Omaha failed to respond to their statement of undisputed material facts in the format required by local rules. We disagree. "District courts have broad discretion to . . . enforce (or not enforce) local rules." *Smith v. Insley's Inc.*, 499 F.3d 875, 879 (8th Cir. 2007). The district court did not abuse this discretion by declining to enforce the local rules' formatting requirements and concluding that it could gather from Omaha's filings which of the Brunings' proffered facts Omaha disputed and which it did not. *See id.* (concluding that the district court did not abuse its discretion by declining to enforce a local rule that required "filing a statement of disputed facts" in a response to a summary-judgment motion).

In sum, with respect to their equal-protection claim, neither the Brunings' merits-based arguments for reversal nor their non-merits-based arguments for

reversal are sound. The district court properly granted summary judgment for Omaha on the Brunings' equal-protection claim.

B.

We turn next to the Brunings' equitable-estoppel claim. In addition to proving the traditional elements of estoppel, a plaintiff bringing an equitable-estoppel claim against the government must prove that the government engaged in affirmative misconduct. *Bartlett v. U.S. Dep't of Agric.*, 716 F.3d 464, 475-76 (8th Cir. 2013). This is a "heavy burden" that requires showing "more than mere negligence." *Id.* at 475; *cf. Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 422 (1990) ("Courts of Appeals have taken our statements as an invitation to search for an appropriate case in which to apply estoppel against the Government, yet we have reversed every finding of estoppel that we have reviewed."). Even "negligence and possible bad faith" is insufficient to establish affirmative misconduct in the absence of evidence that the government intended to mislead the plaintiff. *See Morgan v. Comm'r*, 345 F.3d 563, 567 (8th Cir. 2003).

The Brunings did not present sufficient evidence of affirmative misconduct to withstand summary judgment on their equitable-estoppel claim. They point to eight allegedly false statements made by Omaha officials, including statements that assured the Brunings that they were in compliance with Omaha's zoning regulations, statements that implied that Omaha would be willing to compromise, and a misstatement about when the Zoning Board of Appeals was to consider the dispute. None of these statements suggests an intent to mislead. At most, assuming the statements were made and were false, they reflect negligence and raise a speculative possibility of bad faith. Thus, even if all genuine factual disputes are resolved in their favor, the Brunings have failed to prove affirmative misconduct. *See id.* at 565-67 (holding that a false assurance that the plaintiff's tax liability would be abated and a failure to respond to the plaintiff's inquiries did not constitute affirmative misconduct); *Clason v. Johanns*, 438 F.3d 868, 870, 872 (8th Cir. 2006) (holding that a false assurance by a government official that the government would treat the

-8-

plaintiff as in compliance with a legal requirement did not constitute affirmative misconduct). Accordingly, the district court properly granted summary judgment for Omaha on the Brunings' equitable-estoppel claim.[3]

## III.

For the foregoing reasons, we affirm the district court's orders granting summary judgment in favor of Omaha.

_____

_____

[3]The Brunings also argue, as they do with respect to their equal-protection claim, that the district court should have denied Omaha's motion for summary judgment because Omaha failed to respond to their statement of undisputed material facts in the format required by local rules. This argument fails for the reasons explained above in Section II.A.